(No. 22629.

RALPH WINTERSTEEN, Appellee, *vs.* THE NATIONAL COOP-
ERAGE AND WOODENWARE COMPANY, Appellant.

*Opinion filed June 18, 1935—Rehearing denied October 2, 1935.*

96

HERRICK, J., dissenting.

MILLER, ELLIOTT & WESTERVELT, HENRY KNELLER, and GEORGE W. HUNT, (JOHN D. THOMASON, of counsel,) for appellant.

TODD, MORGAN, PENDARVIS & ARBER, and JOHN C. YOUNGMAN, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The appellee, Ralph Wintersteen, (hereinafter called the plaintiff,) brought an action on the case against the appellant, the National Cooperage and Woodenware Company, (hereinafter called the defendant,) in the circuit court of Peoria county, to recover damages for personal injuries alleged to have been sustained by him at Dewart, Pennsylvania. He recovered a judgment for $18,200 and costs.

The declaration consisted of two counts. The first count charged that on June 23, 1930, at Peoria, Illinois, the defendant loaded a railway box-car with barrels and shipped the same by rail, consigned to the Dewart Milk Products Company at Dewart, Pennsylvania; that the defendant negligently and improperly loaded such car, and by reason of such negligence the plaintiff, while in the exercise of due care, upon opening the car at its destination for the purpose of unloading the freight from the car for his employer was struck by one of the barrels falling out of the car door-way upon him and thereby sustained serious and permanent injuries. So far as material here, the allegations of negligence made by the second count charged that the movement of the car was at the car-load rating, and that at the time of the loading and the movement of the car of freight certain rules and regulations of the Interstate Commerce Commission governing the loading and movement of freight shipments at the car-load freight rate were in full force and effect. The rules were pleaded *in hæc verba.* Such regulations as applied to the car-load ratings require the owner to load freight into cars for forwarding and to unload shipments received. Freight shipped by the owner is to be by him securely blocked or braced and when in closed cars must be away from the car doors. All temporary blocking, flooring, bracing, dunnaging or supports not constituting part of the car, when required to protect and make car-load freight secure for

shipment, must be furnished and installed by the shipper at his expense. Freight in closed cars must be so loaded as to prevent any contact with car doors while in transit. Shippers are required to observe the rules regulating safe loading of freight and protection of equipment. This count charged that the defendant did not, as required by such Interstate Commerce Commission rules, block or brace, dunnage or support such barrels. so that they were kept away from the doors in transit, and the plaintiff was injured by reason of the defendant's negligence in that behalf by one of the barrels which fell upon him while he was engaged in opening the car door. The defendant filed its plea of not guilty.

The evidence shows that the defendant loaded the box-car with 250 empty oak barrels weighing between 70 and 80 pounds each; that the defendant dunnaged the car by nailing four boards across each door horizontally and one board vertically; that the lumber used for such dunnaging was 1 x 4 No. 2 yellow pine, and that the car and lumber were inspected by an employee of the defendant and a railroad inspector before shipment. When the car arrived at its destination it was placed on the siding of the consignee. The plaintiff, then an employee of the consignee, was painting one of its buildings. The president and general manager of the milk products company superintended the opening of the car. He called a fireman and the plaintiff to assist him. The car door was difficult to move. In its ordinary movement a door slides along a sill parallel with the side of the car. The three men were engaged in pulling and shoving the car door in an attempt to open the same. As the door opened one of the barrels instantly fell and struck the plaintiff on the head and he was seriously and permanently injured. An examination of the car was made immediately after the accident. It was discovered that the top strip of dunnaging was broken at a knot. This knot was from two to two and one-half inches in diameter.

The errors urged for the reversal of the judgment of the trial court may be grouped as follows: (1) The common law remedy of the plaintiff is contrary to the public policy of this State and ought not to be enforced as a matter of comity; (2) the trial court admitted improper evidence and (3) refused to give certain instructions; (4) the court erred in denying the defendant's motion, at the close of all the evidence, to direct a verdict for the defendant; and (5) the allowance of the sum paid by the plaintiff for a certified copy of the Interstate Commerce Commission rules and the allowance of attorney's fees for services in connection with the procurement of such rules were each unauthorized by law, and if within rule 18 of this court such rule is unconstitutional. By reason of this last assignment of error the appeal has been brought directly to this court.

It is urged by the defendant that the plaintiff ought not to be permitted, under the doctrine of comity between the States, to maintain his case in the courts of this State, as the place of making of the contract of employment of the plaintiff, his residence and his employment and the place of his injury were all without the State of Illinois; that the plaintiff and his employer were both under and subject to the Workmen's Compensation act of Pennsylvania, and the plaintiff should be limited to his right of recovery under that act against his employer. The defendant company states, in support of its contention, that it is within the provisions of the Workmen's Compensation act of Illinois and that if the injury to the plaintiff had been sustained in Illinois his right of action would have confined him to the remedy afforded by the Illinois Workmen's Compensation act, and argues that if the common law remedy is contrary to the public policy of the State where the suit is brought, such remedy is then never enforced under any circumstances; that had the cause of action for which redress is here sought arisen in our own

State between citizens similarly situated it would be non-enforceable. The Workmen's Compensation act of Illinois does not wholly deprive the workman of the right of recovering damages for personal injuries received by him but only goes to the abolishment of his common law right to recover against his employer for injuries received by the employee in the course of his employment. Where the injury is occasioned by the negligence of a third party not under the provisions of the act the cause of action may be brought by the employee in his own name and recovery had as at common law, with the right of the employer to be subrogated in the recovery to the extent of any compensation payment made by him by reason of such injuries to the employee. (*O'Brien* v. *Chicago City Railway Co.* 305 Ill. 244; *Goldsmith* v. *Payne,* 300 id. 119.) Pennsylvania recognizes the principle that the common law action is open to an employee where his cause of action is against a third person not within the provisions of the Compensation act. (*Scalise* v. *Venzie Co.* 301 Pa. 315, 152 Atl. 90; *Smith* v. *Yellow Cab Co.* 288 id. 85, 135 Atl. 858; *Mayhugh* v. *Somerset Tel. Co.* 265 id. 496, 109 Atl. 213.) The action here is in tort for injuries to the person of the plaintiff. Such action is not prohibited by any statute of this State, nor is the maintenance of the action against public morals, natural justice or the general interest of the citizens of this State. In that situation the doctrine of comity applies and the cause of action may be pursued in such courts of our State as have jurisdiction of the subject matter and the person of the defendant. (*Opp* v. *Pryor,* 294 Ill. 538; *Dennick* v. *Railroad Co.* 103 U. S. 11, 26 L. ed. 439; *Reynolds* v. *Day,* 79 Wash. 499, 140 Pac. 681.) Neither does the fact that the plaintiff is a non-resident deprive him of his remedy in the courts of this State. There is no statute in this State denying redress of grievances by reason of non-residence. The policy of our State has always been to permit persons, regardless of

residence, to bring suits in our courts. Citizenship has never been a condition precedent to the right of an individual to sue in our courts. (*Opp* v. *Pryor, supra; Kellyville Coal Co.* v. *Petraytis,* 195 Ill. 215.) The legislature contemplated that resort might be had to our courts by non-residents and enacted a statute requiring such non-residents to give security for costs. Smith's Stat. 1933, chap. 33, sec. 1, p. 834; Cahill's Stat. 1933, p. 830.

It is argued by the defendant that the second count of the declaration did not state a cause of action and that the trial court erred in admitting the rules of the Interstate Commerce Commission in evidence. To sustain its position the defendant urges that such rules do not have the force of law. Congress has committed to the Interstate Commerce Commission the regulation of interstate commerce and transportation and conferred upon such commission the power to promulgate rules for the administration of such duties. The commission is an administrative and executive body and within its statutory realm it is a legislative body, and its rules and regulations duly adopted by it have the force of law. (*Davis* v. *Keystone Steel Co.* 317 Ill. 278; *Hartness* v. *Iberia and V. Railroad Co.* 297 Fed. 622; *Louisville and Nashville Railroad Co.* v. *Interstate Commerce Com.* 184 id. 118.) Carriage of freight by interstate carrier is a business of a public nature, and rules regulating the manner in which the shipper should load his freight and protect the same so as to do no damage to the railroad equipment or injure the public generally, are reasonable and within the scope of the commission. The rules here under consideration apply only to car-load shipments, taking the freight rate for such class of shipment. The loading of the car and the proper dunnaging of the barrels shipped was a part of the tariff charged for the movement of the car. (*Davis* v. *Henderson,* 266 U. S. 92, 69 L. ed. 182.) Violation of such rules by the shipper, resulting in injury to an employee of the consignee whose duty

it was, under the rules, to unload the shipment, while such employee was in the exercise of due care for his own safety, constituted negligence. The trial court did not err in admitting such rules in evidence.

The contention is made by the defendant that it owed no duty of due care to the plaintiff, inasmuch as there was no contract between the plaintiff and the defendant. It is axiomatic that every person owes a duty to all persons to exercise ordinary care to guard against any injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. This duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest or the proximity of relationship between the parties. It extends to remote and unknown persons. *Colbert* v. *Holland Furnace Co.* 333 Ill. 78; *Baird* v. *Shipman,* 132 id. 16.

It is urged that the method and manner of loading the car at Peoria, even though the car was not properly dunnaged, was not the proximate cause of the plaintiff's injury. The facts on this branch of the case most favorable to the defendant show that the manager of the consignee was unable by his own efforts to open the car door; that he called to his assistance a fireman of the consignee and the plaintiff, and that the manager knew the plaintiff was inexperienced in opening freight cars and ignorant of the danger attending such labor. It is urged that such facts constituted an intervening cause. The defendant cites as authority for its position, *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, *Hartnett* v. *Boston Store,* 265 id. 331, *Illinois Central Railroad Co.* v. *Oswald,* 338 id. 270, and cases from foreign jurisdictions. We do not interpret the Illinois citations as supporting the defendant's position under the facts in this record. It will not be necessary to review the cases from foreign jurisdictions. They are either not applicable here or are not in harmony with the doctrine of

proximate cause as announced in the decisions of this court. It is difficult to write a general rule by reason of the complex and diversified circumstances arising daily in the modern industrial and business world defining a situation in which the causal connection is broken so as to release the party guilty of negligence in the first instance from liability for the injury suffered by another. It may be stated as a general rule that in order to render the party liable for his negligent act such act must be so related to the injury as to be the proximate cause thereof. The intervention of independent, concurrent or intervening forces will not break the causal connection if the intervention of such independent force was itself probable and foreseeable. (*Sullivan v. Ohlhaver Co.* 291 Ill. 359; *Miller v. Kelly Coal Co.* 239 id. 626.) Tested by this rule, the facts here fail to show, as a matter of law, the interruption of the causal connection, or that the dunnaging of the car with defective materials or in an improper manner was not the proximate cause of the plaintiff's injuries. Such issue was a question for the jury. (*Illinois Southern Railway Co. v. Hamill,* 226 Ill. 88.) It was not the duty of the consignee, when he discovered the car door did not open readily, to request the railroad company to open the door, as urged by the defendant.

We will treat the issues of contributory negligence, failure of the court to direct a verdict, and that the verdict was against the manifest weight of the evidence, together. No hard and fast rule can be laid down as to what a person should do for his own safety in the great variety and diversity of situations of danger which now constantly arise, but ordinarily what is due care or what would be the conduct of the every-day reasonably prudent man for his own protection under a like situation is a question of fact which must be left to the determination of the jury. (*Illinois Southern Railway Co. v. Hamill, supra; Chicago and Alton Railroad Co. v. Kelly,* 182 Ill. 267.) If there is no

evidence, or legal inferences reasonably and legitimately arising therefrom, that the defendant would or might reasonably have foreseen the injury to some person situated as the plaintiff was, by the improper dunnage of the car or the use of defective materials in the dunnage construction, the trial court should have decided, as a matter of law, that the failure of the defendant properly to dunnage the car was not the proximate cause of the injury and should have directed a verdict for the defendant. If a reasonably prudent person might, and ordinarily would, foresee that the omission to do a certain act or the commission of an act in a certain way would likely result in injury to another, and injury to another does follow as a result thereof, such act of omission or commission is negligence and the proximate cause of the injury. (1 Thompson on Negligence, sec. 50.) There was positive evidence of the defective condition of one of the strips used in the dunnaging of the car. The trial court was not authorized to weigh the evidence on the consideration of the motion to direct the verdict. (*Frazer* v. *Howe,* 106 Ill. 563.) The facts and weight of the evidence were for the jury, and we would not be warranted in disturbing the verdict of the jury unless it be against the manifest weight of the evidence.

Other rulings on the evidence by the trial court in addition to the ruling admitting the Commerce Commission rules are urged. We find no error in any such rulings against which complaint is made.

The defendant contends that counsel for the plaintiff made prejudicial and inflammatory remarks in his address to the jury. We have carefully read that portion of the argument against which complaint is urged. The trial court promptly sustained the objections to the statements and instructed the jury to disregard such statements. It will be well to recall that there is no conflict as to the ex-

tent of the plaintiff's injuries. Neither is it urged that the damages awarded by the verdict of the jury are excessive. We do not find any such error in the argument of counsel as would warrant a reversal of the judgment.

Complaint is made of the ruling of the trial court in refusing to give the first, second, third and fourth instructions requested by the defendant. The first instruction, in substance, informed the jury that if they believed from the evidence that the defendant dunnaged the car in which the barrels were shipped in accordance with instructions of the railway company and that the car and dunnaging thereof were inspected by the railway inspector and accepted for shipment, the consignee thereupon became the owner of the barrels and the plaintiff could not recover. The railway company was not authorized to waive the rules of the Commerce Commission. No employee or executive of the originating carrier could, either by an express statement to that effect or by accepting the car for transportation, waive the rules requiring the proper dunnage of the car. (*Davis* v. *Henderson, supra; Davis* v. *Keystone Steel Co. supra; Chicago and Eastern Illinois Railway Co.* v. *Transfer Railroad Co.* 317 Ill. 65.) Neither could the railway company waive the liability, as between the plaintiff and the defendant, for any injury growing out of the use of defective and unsafe materials by the defendant in dunnaging the car. (*Lewis* v. *New York, O. and W. Railway Co.* 210 N. Y. 429, 104 N. E. 944.) As to the second, third and fourth instructions, the legal principles therein contained were covered by other instructions given on behalf of the defendant. Where instructions embodying the same legal principles, couched in different language, are submitted to the court, the court may select and give such instructions as he deems fit, and even if it should appear that the court did not give the one plaintiff would have preferred, such action of the court is not prejudicial error. *People* v. *Anderson,* 355 Ill. 289.

Before the trial of the cause the plaintiff exhibited to the defendant a copy of the rules of the Interstate Commerce Commission as such rules were set up in the declaration, and demanded an admission that they were in force and effect and covered the loading of the car for interstate shipment. The defendant refused to make the admission. On the trial the plaintiff introduced a certified copy of the Interstate Commerce Commission rules. After judgment was entered he made a motion to tax as costs the expense of procuring the certified copy and also for an allowance for attorney's fees on behalf of his attorney for his services in procuring it. The court allowed the sum of $11.20 money expended for the certified copy, and also $100 attorney fees, and ordered the amount of $111.20 taxed as costs in the case.

Article 9 of the Civil Practice act (Cahill's Stat. 1933, chap. 110,) is a schedule of rules of court. Section 104 of said article is Rule 10, and is in part as follows:

(1) "Either party may exhibit to the other or to his attorney, at any time before the trial, any paper material to the action and request an admission in writing of its genuineness. If the adverse party or his attorney fail to give the admission within four days after the request and the delivery to him of a copy thereof, if such copy be required, and if the party exhibiting the paper be afterwards required to prove its genuineness, and the same be finally proved or admitted on the trial, the expense of proving the same, including a reasonable counsel fee for the time and attention devoted thereto, to be ascertained and summarily taxed at the trial, shall be paid by the party refusing the admission, unless it shall appear to the satisfaction of the court that there were good reasons for the refusal, and an attachment or execution may be granted to enforce the payment of such expense."

Prior to the effective date of the Civil Practice act, this court at the December term, 1933, adopted a code of

rules of practice and procedure. Rule 18 thereof is in the same language as Rule 10 of the statute. It is contended by the defendant that the statute is an attempted delegation of legislative power to the Supreme Court in the matter of making rules for the imposition of costs. At common law costs were not recoverable. Therefore costs can now be imposed and recovered only where authorized by statute. (*Wilson* v. *Clayburgh,* 215 Ill. 506; *Rieker* v. *City of Danville,* 204 id. 191.) Statutes which authorize the taxation of costs are penal in their nature, and unless authority to tax them is clearly granted by statute their allowance cannot be sustained. (*Goudy* v. *Mayberry,* 272 Ill. 54.) While the power to impose costs must ultimately be found in some statute, the legislature may nevertheless grant the power in general terms to the courts, which in turn may make rules or orders under which costs may be taxed and imposed, but the courts cannot make such rules or orders and impose costs thereunder unless the power so to do is expressly given them by statute or ratified by legislative enactment. (15 Corpus Juris, 23.) The frequent difficulty and considerable expense of procuring the production of documentary evidence is well understood by the legal profession. The purpose of the statute was to obviate that difficulty so far as possible and to compel an admission by the adverse party of evidence which is generally of incontrovertible character. Both the statute and the rule pertain to court procedure. There is no constitutional objection to the legislature's delegation of power to regulate judicial procedure to courts. (*Rules of Court case,* 204 Wis. 501.) The legislature by Rule 10 gave express authority to courts to tax costs covering the reasonable expenses of procuring the testimony which the adverse party ought to admit. The right to tax such costs cannot be said to rest on inherent judicial power, for it finds its lodgment in the specific legislative grant whereby the court was authorized by the Civil Practice act to promulgate a rule regarding the taxation of costs.

It is further urged that both the statute and the rule of court are invalid because they transcend the provisions of section 22 of article 4 of the constitution of this State, which prohibits class legislation, and *Manowsky* v. *Stephan,* 233 Ill. 409, is relied on. In that case the court held that a provision of the Mechanic's Lien law which provided for the taxation of attorney's fees in favor of a creditor was invalid; and it is argued that section 1 of the Civil Practice act states that its provisions shall not apply to actions "in attachment, ejectment, eminent domain, forcible entry and detainer, * * * or other actions in which the procedure is regulated by special statutes." It is then asserted that section 104 of the statute and Rule 18 of this court do not apply to those actions, and therefore the holding in the *Manowsky case* is applicable here. It is said that no reason can be conceived for requiring an adverse party in a tort case to admit the authenticity of a particular document that would not apply with equal force to an adverse party in a forcible entry and detainer case. The difficulty with the argument is that it is based upon a false premise, to-wit, that the Civil Practice act has no application, under any circumstances or conditions, to the actions enumerated in section 1. That section is not to be construed in such a restricted manner. By its plain terms section 1 provides that the Civil Practice act shall not supersede the rules of procedure which are announced in special statutes relative to the enumerated causes of action. There is no intimation that where a procedure in any of such actions has not been specially declared by statute the provisions of the Civil Practice act should not be resorted to.

Where there are express provisions in the special statutes relating to procedure those provisions will necessarily control, but where the special statutes are silent as to any mode of procedure which is contemplated or required by a general law then the provisions of the general law may be applied. Both section 104 of the Practice act and Rule 18

of this court are general in their character and apply to all civil actions unless there is a special statute to the contrary. No such hostile statute exists as to the production of testimony or the taxation of costs, and there is no provision in any of the special statutes which makes it incompatible to apply the provisions of the Civil Practice act in this regard.

For the reasons we have announced, we hold that neither section 104 of the Civil Practice act nor Rule 18 of this court contravenes section 2 of article 2 or article 3 of the State constitution or the first section of the fourteenth amendment to the Federal constitution. The application of Rule 18 of this court is a salutary measure and conforms to the modern legislative trend. Paragraphs 1 and 2 of section 104 are substantially the same as sections 322 and 323 of the New York Civil Practice act, except the latter act contains no provision for taxing attorneys' fees as part of the costs, but all other expenses incurred in obtaining the desired proof may be taxed. The same provisions are to be found in section 142 of Rule 42 of the Michigan court rules of 1931. The rule makes no class distinction. It places in one class all litigants who refuse to make admissions without reasonable grounds. No one is penalized until he has been found to have acted unreasonably by a court of competent jurisdiction. The law does not require his refusal to be based on valid grounds, but he is not permitted to base a refusal upon caprice or unreasonable grounds. Clearly this provision is intended to expedite litigation and to discourage unnecessary and unreasonable delays.

The judgment being correct, it is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERRICK, dissenting:

I concur in the affirmance of the judgment of the trial court for the damages and costs legally taxable, but I am constrained to dissent in so far as the judgment of this

court affirms the taxation of the item of $111.20 as purported costs legitimately taxable.

The first paragraph of Rule 18 of this court provides:

"Either party may exhibit to the other or to his attorney, at any time before the trial, any paper material to the action and request an admission in writing of its genuineness. If the adverse party or his attorney fail to give the admission within four days after the request and the delivery to him of a copy thereof, if such copy be required, and if the party exhibiting the paper be afterwards required to prove its genuineness, and the same be finally proved or admitted on the trial, the expense of proving the same, including a reasonable counsel fee for the time and attention devoted thereto, to be ascertained and summarily taxed at the trial, shall be paid by the party refusing the admission, unless it shall appear to the satisfaction of the court that there were good reasons for the refusal, and an attachment or execution may be granted to enforce the payment of such expense."

By the second paragraph of the same rule it is further provided:

"Any party, by notice in writing, given not later than ten days before trial, may call on any other party to admit, for the purposes of the cause, matter or issue only, any specific fact or facts mentioned in such notice which can be fairly admitted without qualification or explanation as stated therein. In case of refusal or neglect to admit the same, * * * the expenses incurred in proving such fact or facts, including a reasonable counsel fee for the time and attention devoted thereto, must be ascertained at the trial and paid by the party so neglecting or refusing, whatever the result of the cause, matter or issue may be, unless at the trial or hearing the court or a judge certify that the refusal to admit was reasonable, or unless the court or a judge at any time shall order or direct otherwise," etc.

That the end sought to be attained by the provisions of the Civil Practice act under consideration was praiseworthy and in conformity with the modern trend is not

debatable, and while it is desirable to cure the evil of unreasonable and unnecessary delay and to expedite litigation, yet the enactment of statutes and rules which are clearly violative of certain constitutional provisions, both State and Federal, in order to bring about the desired result, is not justified.

The majority opinion concedes that at common law costs were not recoverable. It follows accordingly that costs can be imposed and recovered only in cases where there is statutory authority therefor: (*Patterson* v. *Northern Trust Co.* 286 Ill. 564; *Goudy* v. *Mayberry*, 272 id. 54; *Dixon* v. *People*, 168 id. 179; *Smith* v. *McLaughlin*, 77 id. 596.) A party claiming costs must bring himself within the operation of some applicable statutory provision, since judicial power to adjudge costs against any one on merely equitable grounds is wanting. (7 R. C. L. 781; 15 Corpus Juris, 21; *Patterson* v. *Northern Trust Co. supra; Goudy* v. *Mayberry, supra; Wilson* v. *Clayburgh*, 215 Ill. 506; *Rieker* v. *City of Danville*, 204 id. 191.) The rule that costs cannot be recovered against an unsuccessful litigant unless they are authorized by law has consistently prevailed in this State. (*Wilson* v. *Clayburgh, supra; Rieker* v. *City of Danville, supra; Dixon* v. *People, supra; Chase* v. *DeWolf*, 69 Ill. 47.) Likewise, attorneys' fees cannot be charged in the bill of costs in the absence of statutory authority. (7 R. C. L. 792; *Patterson* v. *Northern Trust Co. supra; Byers* v. *First Nat. Bank of Vincennes*, 85 Ill. 423; *Conwell* v. *McCowan*, 53 id. 363; *Adams* v. *Payson*, 11 id. 26.) Moreover, statutes authorizing the taxation of costs are penal in their nature, must be strictly construed, and unless the authority to tax costs is clearly granted their allowance cannot be sustained. (*Goudy* v. *Mayberry, supra; Gehrke* v. *Gehrke*, 190 Ill. 166.) It follows that the determination of whether costs can be recovered in a particular action is primarily a legislative question.

Recourse to the Civil Practice act discloses that the second paragraph of section 58 (Cahill's Stat. 1933, chap. 110, p. 2157; Smith's Stat. 1933, p. 2189;) declares: "Discovery of documents which are or have been in the possession of any other party to the action may be had, admissions as to any fact may be requested of any other party, and the deposition of any other party or of any person may be taken, at such times and under such terms and conditions as may be prescribed by rules." It will be observed that this section of the statute is silent with respect to the imposition of costs against litigants in any proceeding. The appellee asserts, however, that Rule 18 coincides with section 104 of the Civil Practice act. (Cahill's Stat. 1933, chap. 110, p. 2165; Smith's Stat. 1933, chap. 110, p. 2197.) This section is incorporated in article 9, entitled "Schedule of rules of court," and is denominated Rule 10. By section 3 of the act it is provided that the schedule of rules shall be deemed to be the rules of court, subject to suspension and amendment in any part thereof by the Supreme Court, as experience shall show to be expedient. The question of whether rules of practice prescribed by the legislature infringe upon the power of the judiciary is not presented for consideration. The narrow question to be decided is whether there is legislative authority for the allowance of costs in this and in analogous cases, and, in the alternative, whether the delegation of the legislative power to provide for the taxation of costs is constitutional. The power to make laws can not be delegated. (*Kenyon* v. *Moore,* 287 Ill. 233; *Sheldon* v. *Hoyne,* 261 id. 222.) Although the General Assembly cannot divest itself of its inherent function to determine what the law shall be, it may authorize others to do those things which it might properly but cannot understandingly or advantageously do itself. (*Lydy* v. *City of Chicago,* 356 Ill. 230; *Sheldon* v. *Hoyne, supra; Block* v. *City of Chicago,* 239 Ill. 251.) The grant of unlim-

ited power, however, to be exercised without regulations, rules or conditions, is invalid. (*Sheldon* v. *Hoyne, supra; People* v. *Vickroy,* 266 Ill. 384; *Moore* v. *Mayor of Danville,* 232 id. 307.) "The true distinction," it has been said, "is between a delegation of power to make the laws, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made." 1 Lewis' Sutherland on Stat. Const. (2d ed.) p. 148.

The defendant also contends that section 58 of the Civil Practice act, if it be construed to delegate to this court the power to say what shall be costs, contravenes the fourteenth amendment to the Federal constitution and section 2 of article 2 and article 3 of the State constitution. The first section of the fourteenth amendment to the Federal constitution declares that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," and means subjection to equal laws, applying alike to all in the same situation. (*Yick Wo* v. *Hopkins,* 118 U. S. 356, 30 L. ed. 2201; *Southern Railway Co.* v. *Greene,* 216 id. 400, 54 L. ed. 536.) Supplementing the equal protection provision of the fourteenth amendment, section 22 of article 4 of the constitution of this State prohibits the passage of a special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. The purpose of this provision is to prevent the enlargement of the rights of one or more persons and the impairment of or discrimination against the rights of others. To avoid falling within the constitutional inhibition of local or special legislation, the classification of sub-

jects or objects must be based upon some reasonable and substantial difference in kind, situation or circumstance bearing a proper relation to the purposes to be attained by the statute. *Marallis* v. *City of Chicago,* 349 Ill. 422; *People* v. *Kastings,* 307 id. 92; *Jones* v. *Chicago, Rock Island and Pacific Railway Co.* 231 id. 302; *L'Hote* v. *Village of Milford,* 212 id. 418.

The invalidity of a statute analogous to Rule 18 and of section 104 of the act is illustrated by *Manowsky* v. *Stephan,* 233 Ill. 409. The statutory provision assailed in the case cited was a portion of the Mechanic's Lien law, which among other things, provided that in all cases where liens are enforced, the court should, in its discretion, order a reasonable attorney's fee taxed as a part of the costs in favor of the lien creditor. This court held that the provision transcended section 22 of article 4 of the constitution of this State. In arriving at its decision the court observed: "It is special legislation. It confers a right upon persons entitled to liens by virtue of the Mechanic's Lien law and confers that right upon no others. No reason exists for singling out those holding mechanics' liens and granting unto them this right while denying it to other lienholders, such as landlords, agistors and carriers. Legislation is not special merely because it applies only to the members of a particular class, but to make such a law valid there must be some actual, substantial difference between the individuals of that class and other persons in the State or community when considered with reference to the purposes of the legislation. The class must be composed of individuals possessing in common some disability, attribute or qualification, or in some condition marking them as proper objects in whom to vest the specific right granted unto them."

Section 1 of the Civil Practice act states that its provisions shall not apply to actions in attachment, ejectment, eminent domain, forcible entry and detainer, garnishment,

*habeas corpus, mandamus, ne exeat, quo warranto,* replevin, or other actions in which the procedure is regulated by special statutes. The majority opinion holds that notwithstanding the express limitations and restrictions imposed by section 1 of the New Civil Practice act, to the effect that its provisions shall not apply to certain designated actions and classes of actions, yet that the provisions here under consideration do apply. In my judgment section 104 or Rule 10 of the Civil Practice act does not apply to those actions. The application of Rule 18 of this court to the defendant imposed on it a highly burdensome requirement because of the fact that it was a litigant in a proceeding governed, as to its procedure, by the Civil Practice act—a requirement which under the statute could not be laid on a party in one of the actions named in section 1. The resulting discrimination is essentially arbitrary. There is no reason for requiring an adverse party in a tort case to admit the authenticity of a particular document that would not apply with equal force to an adverse party in a garnishment action or any of the other actions specifically named in section 1; but even if we by judicial construction hold such section and rule are made applicable to the actions specifically named and other actions, and thereby the constitutionality of the section and rule saved, there remain further constitutional inhibitions of which the rule and section are violative.

The application of Rule 18 of this court to the defendant imposed on it an extremely onerous obligation because of the fact that it was a litigant that refused to admit the authenticity of certain documents. So far as the imposition of costs is concerned, the rule places litigants admitting the genuineness of documents and of facts into one class and those refusing to make this admission without reasonable grounds into a different class. The question of the propriety of the refusal, it is provided, shall be determined collaterally. The question to be decided is thus not whether

the refusal was *bona fide* but whether it was unreasonable. The taxation of costs under Rule 18 is subject to the varying opinions of the judges throughout the State instead of being founded on a uniform law applicable alike to all under similar conditions. The resulting discrimination is essentially arbitrary. To the extent that the rule is an attempted exercise of legislative power by providing generally for the imposition of costs it is invalid. It follows that the costs, amounting to $111.20, were improperly taxed against the defendant.

In so far as the judgment of the circuit court of Peoria county taxed the sum of $111.20 as costs against the defendant such judgment should be reversed, with directions to strike out of the judgment for costs the allowance of such sum.