(No. 45441.

FRANK CUNIS, Appellee, v. JAMES M. BRENNAN *et al.*—(The Village of La Grange, Appellant.)

*Opinion filed January 23, 1974.—Rehearing denied March 28, 1974.*

GOLDENHERSH, J., dissenting.

Baker & McKenzie, of Chicago (Lee M. Burkey, William Joseph Linklater, Francis D. Morrissey, and John T. Coleman, of counsel), for appellants.

Mitgang, Levine & Schwartz, of Chicago (John B. Schwartz, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

Frank Cunis, a minor, whose age does not appear in the record, was riding as a passenger in an automobile traveling north on Brainard Street in the Village of LaGrange on December 15, 1967. At the intersection of Brainard and Ogden Avenue the automobile in which he was riding was struck by an automobile traveling west on Ogden, and being driven by James Brennan, one of the defendants. At the collision Cunis was thrown from the automobile approximately 30 feet to the parkway, where one of his legs was impaled upon an object protruding from the ground. The object, later identified as the remains of a drain pipe, was located four and one-half feet west of the west curb of Brainard and five and one-half feet north of the north edge of the north walk on Ogden. The injury necessitated the amputation of the leg.

Through his father as his next friend, Cunis brought an action in the circuit court of Cook County for personal injury against James M. Brennan, Waldo, Inc., a corporation d/b/a Waldo's, Waldo R. Koehler, Alex Bodel, d/b/a Big Al's, O. Schneider, and the Village of LaGrange, a municipal corporation. Count V of his complaint alleged that the defendant village (hereafter, the Village) was under a duty to maintain its parkways in a safe condition and that it had "failed in its duty toward the plaintiff" by permitting a dangerous and broken drain pipe to remain on the parkway. It alleged that the plaintiff sustained his injury as a "proximate result of the negligence" of the Village. On the Village's motion count V was dismissed on the ground that it failed to state a cause of action. The trial court authorized an appeal under our Rule 304(a), and the appellate court reversed the judgment on appeal by the plaintiff (7 Ill. App. 3d 204). We granted the Village's petition for leave to appeal.

A complaint for negligence must set out: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach. (*Mieher v. Brown* 54 Ill.2d 539, 541.) The character of the duty of the defendant which must be established was described in Prosser, Handbook of the Law of Torts (4th ed. 1971), section 53: "In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff ***." This question, *i.e.,* whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the plaintiff's benefit, is one of law for determination by the court. *Mieher v. Brown,* 54 Ill.2d 539, 541; *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99; see also Prosser (4th ed. 1971), sec. 52.

The plaintiff contends that the Village, to avoid liability, must show that it could not have foreseen the

collision of the automobiles and the ejection of an occupant onto the parkway, causing injury. He argues that the ejection of an occupant of an automobile involved in an intersection collision was a foreseeable occurrence and therefore the Village had a duty to maintain the parkway so as to prevent the plaintiff's injury. In support of this contention of foreseeability the plaintiff cites National Safety Council statistics indicating that 32.2% of the 12,000,000 two-car collisions in 1969 occurred at intersections. Also, he argues the foreseeability of his injury from a report published in 1958 (which incidentally was prior to the common use of safety belts) which states that out of 3,261 automobile accidents studied, 13.6% of all persons riding as passengers were ejected upon collision from the automobiles in which they had been riding (73 Public Health Reports (1958), at 381-391), and from two other reports which describe passenger ejection as one of the most dangerous consequences of an automobile collision.

However, the existence of a legal duty is not to be bottomed on the factor of foreseeability alone. We stated this in *Mieher v. Brown,* 54 Ill.2d 539, 544, and there quoted Dean Leon Green's observation: " '[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case ***.' Green, Foreseeability in Negligence Law, 61 Colum. L. Rev. 1401, 1417—18." See also *Conway v. O'Brien* (2d Cir. 1940), 111 F.2d 611, 612, 118 U. Pa. L. Rev. 299, 300; Harper and James, Law of Torts (1956).

In addition, in determining whether there was a legal duty, the occurrence involved must not have been simply

foreseeable, as the plaintiff contends; it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. Negligence as defined in the Restatement (Second) of Torts (1965), section 282, is conduct which falls below the standard established for the protection of others "against unreasonable risk of harm." Harper and James, in their Law of Torts, observe: "Not what actually happened, but what the reasonably prudent person *would then have foreseen as likely to happen,* is the key to the question of reasonableness." (2 Law of Torts (1956), sec. 16.9, at 929.) And Prosser (Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146) comments: "No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." In judging whether harm was legally foreseeable we consider what was apparent to the defendant at the time of his now complained of conduct, not what may appear through exercise of hindsight. We will not look back, as it was felicitously put by Justice Cardozo, "at the mishap with the wisdom born of the event ***." (*Greene v. Sibley, Lindsay & Curr Co.* (1931), 257 N.Y. 190, 192, 177 N.E. 416, 417.) But courts will be retrospective for another purpose. Section 435(2) of the Restatement (Second) of Torts (1965) provides: "The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm."

We recently considered a negligence action where the question was whether a truck manufacturer had a duty to guard against an unusual occurrence which caused the death of the driver of an automobile. In that case (*Mieher v. Brown,* 54 Ill.2d 539) Kathryn Mieher was killed when the automobile she was driving collided with the right rear

corner of an International Harvester truck. The administrator of her estate brought a wrongful death action against the manufacturer of the truck on the theory that the truck had been negligently designed because there were no bumper guards or shield on the rear of the truck. The complaint set out that such alleged defect caused the rear of the truck to penetrate Mieher's windshield causing her death. On the manufacturer's motion, the counts which charged it with negligence were dismissed for failure to state a cause of action. The appellate court reversed (3 Ill. App. 3d 802), and we in turn reversed the appellate court (54 Ill.2d 539).

In doing so, we said: "Although the injury complained of may have been, in a sense, foreseeable, we do not consider that the alleged defective design created an unreasonable danger or an unreasonable risk of injury. In the words of section 435(2) of the Restatement (Second) of Torts, 'looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm' for which recovery is now sought. Public policy and the social requirements do not require that a duty be placed upon the manufacturer of this truck to design his vehicle so as to prevent injuries from the extraordinary occurrences of this case." *Mieher v. Brown,* 54 Ill.2d 539, 545.

Thus it was held that the claimed defect in design did not create an unreasonable danger or risk of injury. We consider that what we held in *Mieher* applies here. There the decedent had driven into the rear of the truck, which is certainly one of the most frequently occurring types of vehicle collision. There was no duty on the defendant, we said, to have designed the truck so as to prevent injury from what occurred, which we described as extraordinary. The circumstance here of the plaintiff's being thrown 30 feet upon the collision with a third person's automobile and having his leg impaled upon the pipe was tragically bizarre and may be unique. We hold that the remote

possibility of the occurrence did not give rise to a legal duty on the part of the Village to the plaintiff to provide against his injury. "No man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded." (Prosser, Handbook of the Law of Torts (4th ed. 1971), sec. 31, at 146.) The same author has also commented: "[L]iability must stop somewhere short of the freakish and the fantastic." Palsgraf Revisited, 52 Mich. L. Rev. 1, 27 (1953).

Accordingly, we judge that count V of the complaint did not state a cause of action against the Village.

For the reasons given, the judgment of the appellate court is reversed and the judgment of the circuit court of Cook County is affirmed.

*Appellate court reversed; circuit court affirmed.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. In reaching its conclusion that count V of plaintiff's complaint did not state a cause of action against the defendant Village, the majority has "bootstrapped" dictum from *Mieher v. Brown*, 54 Ill.2d 539, into authority for holding that the defendant cannot be liable to the plaintiff because it did not owe him the duty to exercise ordinary care in keeping its parkway free of the hazardous condition alleged in the complaint. The majority·cite *Mieher* for the proposition that "A complaint for negligence must set out: the existence of a duty owed by the defendant to the plaintiff, a breach of that duty and an injury proximately resulting from the breach. (*Mieher v. Brown*, 54 Ill.2d 539, 541.) The character of the duty of the defendant which must be established was described in Prosser, Handbook of the Law of Torts (4th ed. 1971), section 53: 'In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff ***.' " *Mieher*

does not so hold, and additionally, it should be noted that Professor Prosser cites no authority for the statement quoted, and that examination of his analysis of the subject in the 4th edition, as well as the earlier editions, fails to support his conclusion. *Mieher* clearly recognizes that a duty, if owed, is owed generally and not to a particular plaintiff. In *Mieher,* after discussing *Evans v. General Motors Corp.,* 359 F.2d 822, and *Larsen v. General Motors Corp.,* 391 F.2d 495, the majority said: "The question in *Larsen* and *Evans* concerned the duty of the manufacturer to design a vehicle in which it was safe to ride. The question in our case involves the duty of the manufacturer to design a vehicle with which it is safe to collide." (54 Ill.2d 539, at 543.) This does not, as the majority states, suggest that duty is owed to one class, rather than another, of persons who might suffer injury.

The majority here has managed to confuse the questions of duty and foreseeability, which are, and should be kept, separate and distinct. In *Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95, the court, defining duty, said "The contention is made by the defendant that it owed no duty of due care to the plaintiff, inasmuch as there was no contract between the plaintiff and the defendant. It is axiomatic that every person owes a duty to all persons to exercise ordinary care to guard against any injury which may naturally flow as a reasonably probable and foreseeable consequence of his act, and the law is presumed to furnish a remedy for the redress of every wrong. This duty to exercise ordinary care to avoid injury to another does not depend upon contract, privity of interest or the proximity of relationship between the parties. It extends to remote and unknown persons." 361 Ill. 95, at 103.

It is noted, too, that the majority relies on *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99. Even a cursory examination of the authorities since the decision of *Palsgraf* is sufficient to show that the modern enlight-

ened view which presently prevails in most jurisdictions is that which was expressed by Judge Andrew in his dissent in *Palsgraf:*

> "Everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others. Such an act occurs. Not only is he wronged to whom harm might reasonably be expected to result, but he also who is in fact injured, even if he be outside what would generally be thought the danger zone. There needs be duty due the one complaining but this is not a duty to a particular individual because as to him harm might be expected. Harm to someone being the natural result of the act, not only that one alone, but all those in fact injured may complain. \*\*\* Unreasonable risk being taken, its consequences are not confined to those who might probably be hurt." 248 N.Y. at 350-51, 162 N.E. at 103.

There is no question that a municipality owes the duty to exercise ordinary care to keep its streets, sidewalks and parkways safe for use by persons who are themselves in the exercise of ordinary care. (*Storen v. City of Chicago,* 373 Ill. 530; *Brennan v. City of Streator,* 256 Ill. 468; see also annotations at 61 A.L.R. 267 and 19 A.L.R.2d 1053.) If this were an action brought by a pedestrian who stumbled over the object upon which plaintiff's leg was impaled, or if plaintiff, instead of being thrown from an automobile had rolled into the parkway while scuffling with another boy, it is unlikely that defendant would now contend that it was under no duty to remove the drain pipe.

I turn now to the question of foreseeability. The Illinois rule is that in order to impose liability on a tortfeasor it must be reasonably foreseeable to an ordinarily prudent person that injury will reasonably and probably result from his failure to exercise ordinary care,

and it is not essential, in order to hold him liable for the injury which proximately results from his failure to exercise ordinary care, that he foresee either the precise injury that results therefrom or the manner in which it occurs. *Neering v. Illinois Central R.R. Co.,* 383 Ill. 366; *Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95.

The majority, referring to duty, when it was obviously discussing foreseeability, said "The circumstance here of the plaintiff's being thrown 30 feet upon the collision with a third person's automobile and having his leg impaled upon the pipe was tragically bizarre and may be unique. We hold that the remote possibility of the occurrence did not give rise to a legal duty on the part of the Village to the plaintiff to provide against his injury." That the occurrence was tragic, I agree; that it was neither bizarre nor unique is clearly shown in that the Restatement (Second) of Torts contains the following:

"A possessor of land who creates or permits to remain thereon an excavation or other *artificial condition* so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others *accidentally* brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are traveling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel" (emphasis supplied; Restatement (Second) of Torts, sec. 368)

and that a number of analogous cases are collected in the appendix to the Restatement and at 14 A.L.R. 1397 and 159 A.L.R. 136. Nor need we look beyond this jurisdiction for persuasive authority. In *Kubala v. Dudlow,* 17 Ill. App. 2d 463, the court cited and applied the Restatement to a factual situation which involved the placing of posts

near a highway where they were hazardous to persons unintentionally leaving the right of way.

Under legal principles clearly stated and long established, the question whether the defendant Village failed to exercise ordinary care in permitting the sharp, rusty, dangerous pipe to remain in the parkway was a question of fact, as were also the questions of whether it was reasonably foreseeable that failure so to do might cause injury and whether the failure to exercise ordinary care was the proximate cause, or one of the proximate causes, of plaintiff's injury. The count directed against the defendant Village clearly stated a cause of action and I would affirm the judgment of the appellate court.