MABEL JOHNSTONE, Plaintiff-Appellant, *v.* ORSCHELN DEEDS, INC., Defendant-Appellee.—(ORSCHELN DEEDS, INC., Defendant-Third-Party Plaintiff, *v.* ORSCHELN BROS. TRUCK LINES, INC., Third-Party Defendant.)

First District (5th Division)   No. 61332

Opinion filed April 23, 1976.—Rehearing denied June 9, 1976.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (Frederic J. Grossman, James T. Ferrini, and William J. Sneckenberg, of counsel), for appellant.

Heineke & Schrader, of Chicago (Paul H. Heineke and John E. Guy, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the modified opinion of the court:

This is an appeal from an order granting defendant's motion for summary judgment against plaintiff on October 9, 1974, and the court's finding that no just reason exists for delay of appeal by plaintiff. Notice of

appeal was timely filed. The court also granted defendant's motion for summary judgment for indemnity against the third-party defendant, plaintiff's employer, on February 5, 1975. That order is not involved in this appeal.

The facts relevant to the disposition of the appeal are as follows. Defendant, Orscheln Deeds, Inc. (hereinafter Deeds), owned a large parcel of real estate in the village of Summit, Illinois. Deeds leased the property in its entirety to the third-party defendant, Orscheln Bros. Truck Lines, Inc. (hereinafter Brothers), in 1956 and renewed the lease in 1966 for 10 years. As the name implies, Brothers used the property as a truck terminal. The applicable provisions of the lease read as follows:

"4. It is agreed that the lessee shall, during the term of this Lease, be responsible for and make all necessary repairs, painting, or decoration to the interior of the premises herein leased, and shall maintain and repair dock bumpers, steps and hardware readily damageable or disposable through constant trailer and truck contact, driveways, approaches and parking areas. *It is understood and agreed that if Lessee does not keep these portions of the premises herein leased in a good state or repair, that the lessor, after due notice of at least thirty (30) days, may cause repairs to be made, the cost to be borne by the lessee and paid in addition to the rents herein provided.*

The Lessor hereby agrees to maintain the exterior of the premises herein leased including the roof, except as follows: The Lessee shall at its expense repair any leaks, tears, holes, breaks which are occasioned by the anchors, bases, bolt holes relative to the installation, breaking loose, tearing, or falling of roof structures, guy wires, antennas, or signs, or occasioned by workmen, repairing, painting, or maintaining these roof mounted items.

Lessee shall also be responsible for and repair any damage of the roof, eaves, canopy, or walls of the building caused by trucks coming into contact with it, and for reimbursement of the damage from any other person or company who may have caused the damage.

5. It is understood and agreed that in the event it becomes necessary to make capital improvements to the premises herein leased such as, but not limited to, sprinkler system, water service, sewerage service, paving, building addition, that the Lessee may make such improvements upon written consent of the Lessor, and if the cost of such capital improvements are borne by the Lessee that there will be no change in rent; however, if expense of such capital improvement must be borne by Lessor, then the rent will be increased on the basis of one per cent (1%) per month of the cost

of the capital improvement, and subject to the escalator allowances herein contained, and the lease on the · capital improvement will be automatically extended for ten (10) years, from the date of completion of the capital improvement." (Emphasis supplied.)

There was only one means of ingress or egress from outside the premises occupied by Brothers, through a gate on the east edge of the property wide enough to accommodate two automobiles. The area which is inside the gate is paved with a substance called cold patch with loose stones on top and the rest of the lot was covered with gravel. As a result of travel of trucks in and out of the premises a large hole developed just inside the gate. The hole traversed 50 per cent or a little more of the width of the gate, but there was ample walking space on either side of the hole. Both plaintiff and the terminal manager testified that the hole existed a matter of months before the injury to the plaintiff.

Plaintiff, a long-time employee of Brothers (from 1959), testified that on February 23, 1973, as she walked through the gate on her way to work she slipped on loose gravel and ·fell into the hole which was to her left, suffering injuries. She could not remember how close to the hole she was walking.

Prior to plaintiff's injury, Deeds undertook to blacktop the parking area to comply with a village of Summit antipollution ordinance which required all parking areas to be covered with blacktop or concrete and agreed to pay for the improvement subject to the rent increase in accordance with a provision in the lease. A contract for the work was entered into by Deeds in December, 1972 but because blacktopping cannot successfully be done during winter weather, the improvement was not to be done until May, 1973.

OPINION

■■■ Plaintiff contends that when Deeds agreed to blacktop the area and to pay for it, it assumed control of the property and therefore assumed a duty to her to maintain the area in a safe condition while repaving the chuckhole. Defendant contends that its agreement to blacktop the area did not in any way alter the provision in its lease that Brothers was to maintain the parking area and did not impose a duty on it for any reason or purpose. We agree with defendant and hold that the mere undertaking to blacktop in accordance with the village of Summit ordinance did not relieve Brothers of its obligation to maintain the area pending the accomplishment of the improvement required by the village ordinance and accordingly hold that Deeds had no duty to plaintiff on the date of her injury.

The character of the duty of the defendant must be established as

described in Prosser, Handbook of the Law of Torts, section 53 (4th Ed. 1971):

> "In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff * * *. This question, *i.e.*, whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the plaintiff's benefit, is one of law for determination by the court." *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617; *Mieher v. Brown*, 54 Ill. 2d 539, 301 N.E.2d 307.

Hence, on the facts in the case at bar plaintiff did not stand in such a relationship with Deeds so as to generate a duty of affirmative conduct by Deeds for the benefit of the plaintiff.

Because we have found that Deeds owed no duty to protect the plaintiff against injury, we find it unnecessary to consider other issues.

The order of the circuit court is accordingly affirmed.

Affirmed.

LORENZ, P. J., and SULLIVAN, J., concur.