(No. 5907—

MATH MIKE RAJNOVICH, ET AL., Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 10, 1977.*

DEUTSCH and LEVY, Attorneys for Claimants.

WILLIAM J. SCOTT, Attorney General; MARTIN A. SOLL, SAUL R. WEXLER, WILLIAM KARAGANIS, and PEGGY BASTAS, Assistant Attorneys General, for Respondent.

SPIVACK, J.

Claimants each seek to recover from the State of Illinois the sum of $25,000 for personal injuries allegedly sustained as a result of Respondent's negligence, whereby Claimant Rajnovich's decedent was killed and Claimant Doyle severely and permanently injured.

The cause was assigned to Commissioner J. P. Griffin who heard testimony and received the evidence on January 21, 1975. In due time, the Commissioner filed with the Court his report, the transcripts of the testimony and argument, various exhibits and the parties' briefs and arguments. Neither party requested oral argument before the full Court, and the matter is now before us on the record as presented.

The pertinent facts adduced by Commissioner Griffin from the testimony of Claimant Doyle, of Claimant Rajnovich, of Robert Bennett, and from the evidence deposition of James A. Glenos, as well as from the pleadings and exhibits admitted into evidence, are in summary as follows:

On August 23, 1969, at about 7:45 a.m., Claimant Doyle and decedent Rajnovich were operating their motorcycles in a northerly direction on Interstate 94. At Toll Plaza 25, they paid their toll and requested and received permission from the attendant to park their motorcycles and to rest in a grassy area adjoining the toll booth. They proceeded to an area approximately 15 feet east of the paved portion of the highway where they chained their vehicles and went to sleep under some

bushes. The weather was warm and clear and the pavement dry.

At about this time, Private James A. Glenos was operating a National Guard truck northerly on Interstate 94 at a speed of 45 m.p.h. When he was within 200 yards of the toll booth, he applied his brakes but they failed; when he was within 75 feet of the booth, his speed had reduced to about 20 m.p.h. and he pulled the handbrake, however, it too failed to stop the vehicle. At the last minute, to avoid striking an automobile parked at the toll booth, he veered off the highway, striking the sleeping men in the bushes whom he did not see and could not have seen.

As a result of this tragic occurrence, Rajnovich was killed and Doyle sustained diverse injuries, including broken bones and soft tissue damage.

The testimony indicates that shortly before the occurrence, prior to taking the truck from the National Guard Compound, Glenos "inspected" the vehicle. Specifically, he tested the foot brakes by stopping and starting, and they appeared normal; he tested the lights, wipers, horn and tires, and they all were normal and operational; he did not test the handbrake except to disengage it from its locked position upon start-up.

An inspection of the vehicle following the accident showed that the brake failure was caused by loss of brake fluid caused by a broken brake line elbow, which in turn resulted in a misaligned brake line which caused unusual stress at the elbow. Additionally, the inspection indicated that the handbrake held only on the last notch.

The evidence further proved that the vehicle, a 2-1/2 ton M-135 Cargo truck, was the property of the United States, although issued to the Illinois National

Guard for its use and was at the time of the occurrence being used for Federal rather than State purposes.

At the time of his death, Math Jack Ragnovich was 22 years of age. He left surviving him his father, mother and minor son, Michael Jack James Rajnovich. Funeral, cemetery and related expenses, including estate expenses, totalling $1,816.40 were advanced by the father. Although decedent was a skilled mechanic, his most recent earnings were meager and the amount of his actual contribution to the support of his minor son questionable. Decedent's motorcycle, which was a total loss, had a market value of approximately $1,900.00.

Claimant Doyle was also 22 years of age at the time of the occurrence. As a result of his injuries, his medical, hospital and related expenses, all of which were reimbursed by insurance, amounted to approximately $600.00. His motorcycle, totally destroyed, had a market value of about $1,500.00. Claimant's average earnings were $150.00 per week and he was unable to work for a period of six and one-half months following the accident.

At the outset, we are confronted by the argument of the State, which it characterizes as "jurisdictional": that regardless of the actual question of negligence, the Claimant ought not to prevail since at the time of the occurrence, the vehicle was on a Federal, rather than State, mission. Thus, argues the State, the Claimant's proper remedy, whenever the National Guard is called to active duty under *Title 10, U.S. Code* or to inactive training under *Title 32, U.S. Code,* is to proceed against the Federal Government, pursuant to applicable provisions of either the Federal Tort Claims Act or the National Guard Claims Act. Each such Act contains a two year Statute of Limitations. Citing *Speer v. State,* 27 Ill.Ct.Cl. 188; *McRaven v. State,* Court of Claims No. 5586, *Dobbs v. State,* Court of Claims No. 5312.

In order to properly dispose of the State's first contention, it is necessary to understand the chronology of the material facts: (i) the event giving rise to the claim occurred on August 23, 1969; (ii) the instant claim was filed on August 24, 1970; (iii) the *Speer* case, *supra,* which was the case of first impression in this Court on the issue, was entered on April 27, 1971 (four months *before* the expiration of the limitations section of the federal statutes); (iv) the State filed its Motion to Dismiss on December 13, 1971 (four months *after* the Federal statute had tolled); (v) on February 9, 1972, having received no objection to the State's Motion to Dismiss, this Court dismissed the cause; (vi) Claimants filed their Motion to Vacate and Reinstate on November 16, 1972, to which no objections were filed by the State; (vii) on December 1, 1972, and again on December 11, 1972, the State confirmed to this Court that it had no objections to affording Claimants a hearing on the merits; (viii) on January 9, 1973, this Court entered its Order vacating the prior dismissal and reinstating the cause.

The State now contends that the prior Order of January 9, 1973, vacating the dismissal of February 9, 1972, and reinstating the cause did not address itself to the issue before us and that in any event, *Speer* stands for the proposition that the issue is jurisdictional and can accordingly be raised at any time. We disagree. It is clear from the record, and from the information given this Court by the State on December 1, 1972, and again on December 11, 1972, that this is the precise issue considered by all parties and determined by the January 9, 1973, Order of Reinstatement. We can only speculate that the rationale behind the State's position heretofore expressed on December 1, 1972, and December 11, 1972, was that, by waiting eight months following *Speer* be-

fore it filed its original Motion to Dismiss, the State equitably shared in the fault of Claimants in not pursuing in a timely fashion their Federal remedies and ought not benefit thereby.

We likewise disagree with the State's interpretation of *Speer,* and the line of cases following, as standing for the proposition that the issue goes to this Court's *jurisdiction*. To the contrary, we support the holding of *Speer* which finds that the issue simply creates a valid defense to the claim. At page 189, the Court stated, "Since they (National Guard members on a Federal mission) are not, at these times, performing a State function, any tort committed . . . would not constitute a tort by the State and no liability would ensure thereby. . . ." To summarize, since the matter is not jurisdictional, we find that the State's first argument is moot, it having been already decided by this Court on January 9, 1973. Parenthetically, it is our view that the Order then entered was based upon sound equitable principles in light of the specific facts presented and in no way modifies the law as enunciated in *Speer* and subsequent cases.

It now remains to decide the case on its merits and in accordance with applicable and well-established law.

It is the burden of Claimants to prove by a preponderance of the evidence that (i) they were free from contributory negligence, (ii) that the State was negligent, and (iii) that the State's negligence was the proximate cause of the accident and of Claimant's injuries and damages.

It is our opinion that Claimants have in fact proven, by a preponderance of the evidence, that they were free from contributory negligence. Their act of leaving the paved portion of the highway to rest in an unpaved

grassy area, 15 feet from the edge of the road, with the knowledge and consent of the toll booth operator, did not violate their duty of ordinary care for their persons and property. No reasonable person could have anticipated that their resting place would be in the path of a vehicle which had driven off the highway.

On the question of the State's negligence, Respondent devotes a considerable portion of its argument to the proposition that Glenos was not negligent in driving off the highway and over the Claimants inasmuch as he could not have reasonably anticipated their presence in the bushes. In other words, that one of the necessary elements of negligence, *foreseeability,* was absent. We did not quarrel with the rationale of the cases on foreseeability cited, *i.e., Cunis v. Brennan,* 56 Ill.2d 372; *Barnes v. Washington,* 56 Ill.2d 22; *Winnett v. Winnett,* 57 Ill.2d 7. We believe, however, that Respondent misapprehends the negligent acts of the State in regard to which Claimants have sustained their burden of proof.

The evidence establishes that the proximate cause of the State's vehicle leaving the highway was that the driver, Glenos, was responding (*arguendo,*reasonably) to the failure of his foot brake and emergency brake to stop the vehicle. If these failures were due to a *latent* defect, then ordinary care, maintenance and inspection would not have disclosed such impairments and the brakes' failures and subsequent proximate results would have been unavoidable and not compensable under any negligence theory. On the other hand, if the defects were *patent,* that is, known or reasonably discoverable, then the State breached its duty of ordinary care by not correcting the condition if known, or not discovering it if ordinary care would have disclosed it.

It is a legally insufficient defense for the State to simply prove a brake failure. Respondent has the addi-

tional burden of proving by a preponderance of the evidence that the defects were latent. *Savage v. Blancett,* 47 Ill.App.2d 355. In view of the evidence here that the brake line elbow rupture was caused by a misaligned brake line (which would have been apparent had it been examined prior to the accident as it was following the occurrence), that the emergency brake only held on the last notch, and that the emergency brake was in no wise tested before the fateful journey, we find that Respondent has failed to prove by a preponderance of the evidence that the defects giving rise to the brake failures were latent. To the contrary, we are of the opinion that each of the defects was patent and should in the exercise of reasonable care have been detected and remedied. The failure to so detect and remedy was negligent on the part of the State.

Respondent argues that *Savage* is only applicable if defendant alleges the latent defect as an affirmative defense. We do not agree. Although in *Savage* a special defense was filed, the rationale of the decision is in no way concerned with the parties' burdens of proof *as related to the pleadings.* We do not believe that the defendant has a lesser substantive burden of proof if he fails to file an affirmative defense than if he had so filed. To so hold would be an absurdity.

Respondent then argues that *McKinsey v. Morrisey,* 12 Ill.App.3d 156, limits the holding in *Savage. Again, we do not agree.* In *McKinsey,* the Court simply held that defendant's burden of proof was never presented to the jury and thus the "doctrine of latent defects" was never decided. Further, the facts in *McKinsey,* superficially similar to the case at bar, are critically different in one major area. In that case, defendant testified that the brakes had been repaired just one week before the accident. Thus, even without an instruction, the jury

apparently concluded that the brake failure was as far as defendant was concerned a latent and not a patent defect.

There is no real question here that the Claimant's injuries were proximately caused by the accident which was in turn proximately caused by the brake failure.

We conclude therefore that Claimants have sustained their required burdens of proof relative to freedom from contributory negligence, negligence of the State, and proximate causation.

On the question of damages sustained by the decedent's minor son, Respondent argues that decedent's poor work habits and sketchy support contributions rebut the legal presumption of substantial damages. We believe that this presumption of substantial loss, even without proof thereof, long the law of this State, *Jadlowski v. State,* 26 Ill.Ct.Cl. 66, is well considered. As applied to the instant facts, does the fact that a 22 year old is not adequately assuming his responsibilities prove that he will not in the future? Common sense and the wisdom born of years tells us otherwise. Also, it is to be remembered that the law recognizes and enforces the father's duty to support his child, even if the father's predilections are otherwise. We do not therefore believe that the equitable and legal presumption of substantial financial loss to a minor for the wrongful death of his father without specific proof thereof has been rebutted by the evidence before us.

Claimant, Math Mike Rajnovich, Administrator of the Estate of Math Jack Rajnovich, is therefore awarded the sum of Twenty-Five Thousand Dollars ($25,000.00) to be distributed in the following manner:

(1) To Math Mike Rajnovich, as reimbursement for funeral, estate and related expenses, the sum of $1,816.40;

(2) To the estate of the decedent, as and for property damage, the sum of $1,900.00; and

(3) To the guardian of the minor, Michael Jack James Rajnovich, in trust for the care and education of said minor, the sum of $21,283.60.

Claimant, Donald F. Doyle, Jr., having sustained damage to his person and property in the sum of $16,000.00 and having been reimbursed in the sum of $600.00 which amount is therefore deducted in accordance with the Rules of this Court, is therefore awarded the sum of Fifteen Thousand Four Hundred Dollars ($15,400.00).