Mary G. Fricke, Administratrix, Appellant, v. St. Louis Bridge Company et al., Appellees.

Opinion filed March 1, 1941.

JOSEPH A. TROY, of Belleville, and BEASLEY & ZULLEY, of East St. Louis, for appellant.

KRAMER, CAMPBELL, COSTELLO & WIECHERT and NORMAN J. GUNDLACH, both of East St. Louis, for appellees.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This is an appeal by appellant, Mary G. Fricke, administratrix of the estate of her deceased husband, Bernie C. Fricke (hereinafter called plaintiff), from an order of the circuit court of St. Clair county, granting appellees' motion for judgment *non obstante veredicto* after a verdict in the sum of $2,000 had been rendered in favor of plaintiff.

The complaint in this case consisted of three counts, but the third count was withdrawn and the case went to the jury on the first and second counts. It is alleged in each of said counts that, the appellees, St. Louis

Bridge Company, a corporation, and the Terminal Railroad Association of St. Louis (hereinafter called defendants), were the owners and operators of the Eads Bridge, which spans the Mississippi river between East St. Louis, Illinois, and St. Louis, Missouri; and that on the 18th of December, 1887, the defendant St. Louis Bridge Company, a corporation, leased the said Eads Bridge to the Terminal Railroad Association of St. Louis for a term of 500 years.

It is further alleged in said complaint that the bridge has 2 decks. The upper deck on and prior to the 24th day of December, 1938 (that being the date on which the plaintiff's intestate was killed), was used by pedestrian and vehicular traffic, and the lower deck was used for railroad trains. Each count of the complaint alleged that the upper deck, beginning at the western terminus and extending in an easterly direction until, to-wit: The Illinois shore is reached, is 38 to 40 feet wide; and when the Illinois shore is reached, the upper deck divides into 2 lanes, which are, to-wit; 16 feet in width. One lane, being on the south side, continues on the downgrade to the level of West Broadway in East St. Louis. That the south lane is used for the eastbound traffic, and the north lane is used for westbound traffic. That where the main roadway ends, about even with the Illinois shore, there is a sharp and abrupt turn from said main roadway to the south lane.

The complaint further alleged that, the defendants negligently, carelessly, and improperly failed to place any warning or sign of any kind on said bridge to indicate that said main roadway is separated or divided, and on account of said main roadway being so abruptly and sharply divided a dangerous condition was maintained and created by the said defendants, which said dangerous condition was known to the defendants, or could have been known to them, by the exercise of reasonable care, and was not known to plaintiff's intestate and could not have been discovered

by him by the exercise of reasonable care at and prior to the time he was killed on December 24, 1938 at about 9:00 p. m.

Defendants, by their answer, denied the negligence with which they were charged in the complaint, and alleged the lane was 20 feet wide instead of 16.

The evidence in this case was that, on the night of the accident in question certain police officers of East St. Louis, who were on duty that evening, received information about an accident at the east end of the main roadway of the bridge, where it divides and separates into 2 lanes. Officer Flood testified that he went to the scene of the accident immediately upon receiving such information and found a Ford coupe, with plaintiff's intestate's body slumped over the steering wheel, at the abutment forming the east end of this main roadway of the bridge; that the car was facing east and was a '33 or '34 Ford coupe. The officer testified that the man was apparently dead when he reached the car and opened the door. This officer further testified that on that particular night there was a pile of chat there at the abutment, a tool box standing in the triangular space, and a couple of rolls of wire that workmen had used on the right of way of the bridge.

The evidence further showed that there wasn't any line dividing the main roadway into 2 lanes. There was a tower on the north side, and 1 on the south side of the bridge where the road divided, and these towers sat back 6 or 8 feet west of the abutment where the road divided. The evidence shows that there was a light on each of the towers and that the lights were burning at the time this accident occurred.

Police Officer Flood testified that there were 2 red glass reflectors on the abutment, 1 in about the middle of the abutment, and 1 on the south end of the abutment, and that the reflectors are about 10 inches square or hexagon shape. This officer further testified that

about 150 or 200 feet back from where the road divides, there was a sign, "WELCOME TO ILLINOIS."

The evidence further shows that as one is traveling east, when he leaves the main roadway of the bridge, he would be required to make a turn to the south to get into the lane that leads down to the street, and that that lane is about 12 or 15 feed wide.

The evidence further shows that the defendants had built a concrete form about a foot high, the abutment forming the base of the vortex, being about the center of the bridge and about 12 feet distant from the abutment. Inside this triangular form, the evidence showed, was a tool box, wire, and some other articles. The evidence shows that the front wheel of the decedent's automobile had passed over the form. There is, however, some conflict in the testimony as to whether or not the front of the Ford coupe had struck the abutment. There were no eyewitnesses to this accident so far as this record discloses. Plaintiff appellant offered testimony of a number of witnesses who had ridden with her husband while he was driving automobiles, who testified that the deceased was a careful driver. Plaintiff's witness Charles Gamble, testified that he could see where the road separates at night, 100 feet west from the abutment.

The evidence for the defendants establishes that on the night of the accident in question, the weather was clear and the pavement dry, and a witness was produced by defendants who testified that there were skid marks on the bridge about 20 feet long and that they led back from the abutment in the direction of plaintiff's intestate's car. Another witness offered on behalf of defendants testified that he observed tire burns on the pavement about 30 feet from the car, towards the St. Louis side, leading toward the auto in which the plaintiff's intestate was riding. Another witness called on behalf of defendants, testified that there was enough

284

space between the corner buildings and the abutment
for a street car and a transport truck to go through,
and that there were lights all along on both sides of the
bridge and the approaches thereto.

Defendants also offered in evidence defendants' ex-
hibits ''1'' and ''2,'' which are photographs of the
roadway of the bridge looking east in the direction
which deceased was traveling, taken the morning after
the accident. An examination of these 2 exhibits de-
picts the size and character of the warning marks, be-
ing black and white diagonal stripes on the upper part
of this abutment, and more eloquently show the con-
ditions as they existed in connection with this barricade
than would be possible by any oral testimony.

In the light of this evidence we must give considera-
tion to the question as to whether or not the trial court
acted agreeable to law in allowing the motion for a
judgment notwithstanding the verdict. In the con-
sideration of that motion by the court, the rule must
be applied as to whether there is any evidence to sus-
tain plaintiff's case, and the plaintiff is entitled to the
benefit of all of the facts in evidence tending to prove
plaintiff's case, and all just inferences that can be
drawn therefrom most favorable to plaintiff's case, re-
gardless of whether such evidence is produced by her
or by the defendants, and the trial court had no power
(a jury not having been waived) to determine the
weight and preponderance of conflicting evidence in-
troduced to establish or disprove the facts, as a trial
judge is never authorized to take a case from the jury,
or direct a verdict where to do so would involve the
determination of the preponderance of evidence. As
is readily apparent, if it were permissible for a trial
judge on a motion *non obstante veredicto* to weigh the
evidence and enter judgment according to his opinion
as to wherein lies the greater weight of the evidence,
then the right to a trial by jury would be done away
with and the judgment of the court substituted there-
for, and it is only where there is no evidence, as a

matter of law, to sustain either a plaintiff's or a defendant's claim, that a judgment may be entered notwithstanding the verdict (*Libby, McNeill & Libby v. Cook*, 222 Ill. 206; *Blumb v. Getz*, 366 Ill. 273; Supreme Court Rule 22; *McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120).

Having in mind these very definitely established rules of law that were binding upon the trial court when he gave consideration to the allowance of the motion for a judgment notwithstanding the verdict, and giving consideration to the evidence as that evidence appeared before the trial court when he passed upon the motion, we must conclude that we fail to discover any evidence in this record showing actionable negligence upon the part of the defendants in this case, and a fair consideration of the evidence brings us to the inescapable conclusion that plaintiff's intestate, as a matter of law, was guilty of contributory negligence. It would seem to us that the deceased's negligence was the sole or contributing cause of his death, and that being the fact, there is no liability on the part of the defendants (*Grubb v. Illinois Terminal Co.*, 366 Ill. 330; *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192; *Dee v. City of Peru*, 343 Ill. 36).

It is apparent, under the evidence, that if the deceased had looked and had had his car under proper control, he could have seen the abutment or fence, and also the division of the road, and it cannot otherwise be contended (*Provenzano v. Illinois Cent. R. Co., supra; Dee v. City of Peru, supra; Greenwald v. Baltimore & O. R. Co.*, 332 Ill. 627).

There is no liability for an injury resulting from a collision with a barrier, marker or traffic signal lawfully fixed and maintained and plainly visible to one using ordinary care (25 Amer. Jurisprudence, 770, 771, ''Highways,'' sec. 482).

Plaintiff also assigns as error in this court that the trial court erroneously sustained an objection to her offer to prove that there was in common use in St.

Clair county, signs which were practical and inexpensive and which were to be used to indicate curves or turns in the highways, and that the court should have permitted her to make this proof. We fail to see how this proof could have been material in this case, or in any way error to exclude, and we so hold that the trial court properly sustained the objection to it.

No error having been assigned in this case that would warrant any interference on the part of this court with the action of the trial court in allowing the motion for a judgment notwithstanding the verdict, the action of the trial court is, therefore, affirmed.

*Judgment affirmed.*