Gary Kirby, Plaintiff-Appellee, v. General Paving Company, a Corporation, City of Urbana, a Municipal Corporation, and Richard J. Wozencraft, Defendants. General Paving Company, a Corporation, and City of Urbana, a Municipal Corporation, Defendants-Appellants.

Gen. No. 10,852.

Fourth District.

September 19, 1967.

Phillips, Phebus, Tummelson & Barth, of Urbana (Darius E. Phebus, John T. Phipps, and Francis J. Jahn, of counsel), for appellants.

Summers, Watson and Kimpel, of Champaign, for appellee.

MR. PRESIDING JUSTICE CRAVEN delivered the opinion of the court.

Defendants appeal from a joint judgment in the amount of $40,000 entered upon verdicts of a jury in favor of plaintiff, Kirby, contending that the verdicts were contrary to law, and outright reversal is sought. In the alternative, defendants complain of trial-court rulings on certain exhibits and instructions, and seek a new trial.

Kirby was a passenger in an automobile which turned right from Race Street and went east on Elm Street in Urbana, Illinois, at about 11:45 p. m. on January 9, 1965. The car, driven by Wozencraft, passed through the intersection of Broadway and Elm and mounted a median strip about 50 feet east of the intersection of Broadway on Elm. The car then continued east another 50 feet straddling the median until it struck a concrete light standard being constructed by a subcontractor of defendant General Paving Company. The collision caused serious injuries to the plaintiff and no complaint is made that the verdict is excessive.

The evidence showed that median strips were present on Green and Race Streets which were traveled by the car occupied by the plaintiff on the way to the scene. The Elm Street median strip curbing had been constructed the preceding November. The resurfacing of Elm Street had been finished at the same time. The only construction work remaining to be done was inside the median strip curbing, consisting of placing fill material and constructing lighting facilities there. There was no

work crew or construction equipment present on the night of the collision. Elm Street is 57 feet wide and the median which divided eastbound from westbound traffic was four feet wide and in the center. Light standard bases were being constructed of concrete. These bases were two feet high and were located in the middle of the median about 90 feet apart. On the evening in question, no poles were affixed to them. No street lights were present. The standards were covered with light-colored construction paper. The curbing of the median was composed of light-colored concrete six inches high and the traveled portion of the roadway was of dark-colored asphalt. No unusual weather conditions were present.

There is a slight "S" curve in Elm Street beginning west of the Broadway intersection and ending east. This is caused by an offset of the center line of Elm on each side of the intersection. The extended center lines of Elm Street east and west of the intersection would parallel each other 22 feet and 8 inches apart. Traffic would be required to turn slightly to the north to follow the traffic lanes provided.

In the two months following completion of the resurfacing of Elm and the installation of the curbing on the median, no accidents had occurred. During this time, as on the night in question, there were no street lights present.

The headlights were burning on the Wozencraft car. Outside lighting was present near the scene emitted by lights of undetermined brilliance from the Urbana Post Office on the southeast corner, the City Building on the northwest corner, and Champaign County Courthouse on the northeast corner, and by a municipal parking lot on the southwest corner. All the witnesses giving evidence on the point testified that the median strip on Elm was visible and identifiable as a median strip from 100 or more feet away.

The plaintiff gave no explanation for the accident except that Wozencraft did not complete his turn occasioned by the offset of Elm in the blocks east and west of Broadway. Wozencraft had no memory of the trip. Plaintiff said that prior to entering Elm, while traveling on Race, Wozencraft was driving 35–40 mph and did not slow appreciably for the turn onto Elm.

The allegations of negligence in the complaint charge the defendant city and contractor with permitting "the said construction area . . . to be and remain unlighted, unmarked and unbarricaded and without any signal to warn the members of the traveling public of the unsafe, dangerous and hazardous condition, which said condition amounted to a trap since it was not visible to members of the traveling public and there was no effective warning thereof."

In determining whether the case should be reversed, pertinent observations should be made concerning what was not shown by the evidence nor charged by the plaintiff. There was no allegation or evidence that any unusual conditions existed on the surface of the street normally used for traffic which contributed to cause this injury. There was no allegation or evidence that the plan of construction of the slight "S" curve on Elm Street failed to comply with reasonable engineering standards or that the design, degree or length of the curve created a hazard for a motorist proceeding east on Elm Street with his car under control. Despite the lack of street lighting, there is no evidence that a motorist, with headlights burning, traveling parallel to the curb of the median could not see it, and the evidence in the record affirmatively indicated otherwise.

The status of the plaintiff, Kirby, as a passenger in the car of another is not an issue here respecting the duty, if any, of the defendants to warn the motoring public of the construction or condition of the median strip. We are here concerned with the concepts of neg-

ligence and duty. Any duty owed by the defendants would be owed equally to all persons in vehicles using the city street, whether passenger or driver.

■ ■ We likewise conclude from the evidence that should the duty to warn exist, the question of whether Wozencraft's operation of the car was the sole proximate cause of the crash and resulting injuries to the plaintiff was pre-eminently a question of fact for the jury which returned a verdict resolving this issue adverse to the defendants.

It is clear, then, that this controlling issue is one of law. As stated by the Supreme Court in a recent case:

> "As a prerequisite . . . the plaintiff must establish that the defendant owed a duty to protect . . . (the plaintiff) from the injury alleged to have been sustained. (Citing cases.)" . . . Mick v. The Kroger Co., 37 Ill2d 148, 150 (224 NE2d 859, 861 (1967)).

■ A duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. Hamilton v. Faulkner, 80 Ill App2d 159, 224 NE2d 304 (4th Dist 1967); Herington v. Illinois Power Co., 79 Ill App2d 431, 223 NE2d 729 (4th Dist 1967). "The purpose of warning is to apprise a party . . . of a danger of which he is not aware . . . ." Bakovich v. Peoples Gas Light & Coke Co., 45 Ill App2d 182, 195 NE2d 260, 263 (1st Dist 1963).

■ These general principles of law, viewed in the context of this evidence, control our decision. The median was visible and no warning of it was required. The surface of the street was finished and no contention is made that the curbing or street surface caused or contributed to cause the occurrence. A car leaving the traveled portion of the street which mounted a six-inch

curb to straddle a median strip would sooner or later, if not stopped, encounter difficulty. The nature of that difficulty was caused in this instance by new construction but that fact is of no significance legally. The "darkness" testified to by the witnesses is conclusionary in nature and overcome by testimony that the median, despite the darkness, was visible to anyone looking—a patent condition, not a latent defect. Under these circumstances, the construction in the median was a condition, not a legal cause of the accident, and no warning of its existence was necessary. Fricke v. St. Louis Bridge Co., 309 Ill App 279, 32 NE2d 1016 (4th Dist 1941).

This judgment must be and is reversed.

Judgment reversed.

SMITH and TRAPP, JJ., concur.