MARY TIMM, Plaintiff-Appellant, v. INDIAN SPRINGS RECREATION ASSOCIATION *et al.*, Defendants-Appellees.

Fourth District    No. 4—91—0328

Opinion filed March 19, 1992.

William R. Scott, of Rantoul (G. Michael Prall, of counsel), for appellant.

Costigan & Wollrab, P.C., of Bloomington (Robert W. Neirynck, of counsel), for appellee Ruth Cochran.

Quinn, Johnston, Henderson & Pretorius, Chartered, of Peoria (John P. Fleming and Charles W. Gunnarson, of counsel), for appellee Indian Springs Recreation Association.

JUSTICE LUND delivered the opinion of the court:

Plaintiff Mary Timm appeals from a judgment entered upon a jury verdict that found defendants Ruth Cochran and Indian Springs Recreation Association (Indian Springs) not guilty of negligence for injuries to plaintiff proximately caused by defendants' failure to provide handrails or adequate warning of the lack of handrails on a golf cart owned and operated by Cochran. Plaintiff sustained a fracture to her right ankle resulting in permanent disability. Plaintiff also appeals the denial of a pretrial motion to amend the complaint with the addition of a separate count against Indian Springs. We affirm.

We first address plaintiff's argument that the jury's verdict was against the manifest weight of the evidence. Evidence at trial established the following facts surrounding plaintiff's injury. Plaintiff was golfing with Cochran and two others in a women's golf league on the premises of Indian Springs. Plaintiff was an experienced golfer, having played regularly since 1971, and had ridden in golf carts as many as 100 times before. Plaintiff stepped in and out of the cart several times just prior to the accident. At one point, as Cochran was turning the cart on a slight incline, plaintiff fell out of the cart and injured her ankle. While the other two golfers observed nothing unusual about the way Cochran moved the cart, no one actually saw plaintiff fall. When asked at her deposition whether she had hopped out of the cart while it was moving, she replied that she probably had done so as part of a normal reaction to falling out of the cart. At trial, she compared the reaction to putting up one's hands to keep from hitting something.

Indian Springs is a semiprivate golf course open to members and the public. In 1980, it obtained five golf carts under a lease-purchase agreement from Jack Johnson and, in 1982, it exercised its purchase option. Johnson is a current member of Indian Springs and sat on its board of directors in 1979 and 1980. Johnson testified that during the lease period golfers complained to him that handrails were missing and they did not wish to rent golf carts in that condition. Under the terms of the lease agreement, Indian Springs was required to maintain the carts in a safe working condition. To this end, Johnson notified the greenskeeper of the problem, as it was his responsibility for repairs. When Johnson was asked if he knew the purpose of a handrail, he responded that it is a safety device and, in his opinion, if it was not there, it would definitely contribute to an accident.

A former manager of Indian Springs offered additional testimony, indicating that golf carts missing handrails continued to be rented out to golfers. Attempts were made to repair the carts, but the handrails

continued to fall off. He vacillated when asked if he felt the carts were unsafe, saying they were not unsafe and, yet, under certain conditions they might be.

In 1985, Indian Springs sold one of the golf carts to Cochran and her husband Harold. Cochran's husband was on the board of directors of Indian Springs at the time of purchase. The cart was sold "as is" and was missing a handrail for the passenger side. No operator manuals were furnished, and no warnings were given regarding the missing handrail. Indian Springs agreed to store the golf cart on the course for a fee which included a monthly charge for the privilege of using the cart on the course.

Plaintiff's expert witness William Baldwin, president of the Illinois chapter of the Professional Golfers Association, testified to the fact that the handrails act as a form of body restraint to keep the occupant from sliding out of the cart during its operation. He testified that a golf cart without a handrail is not safe for use. As support, he offered standards for golf carts published by the American National Standards Institute (ANSI), which require that handrails be attached to all golf carts at the time of manufacture. Under cross-examination, he revealed that the standards themselves do not in any respect preclude anyone from purchasing or using products not conforming to the standard. He further stated that no Professional Golfers' Association (PGA) or United States Golfers' Association (USGA) standards rule out using carts without handrails. He had worked at four golf courses in his career, but had never seen these ANSI standards prior to being hired to testify in this case. Plaintiff's expert also testified that he had seen people fall out of golf carts that were equipped with handrails, and that he could not specifically state whether a handrail would have kept the plaintiff in the cart in this accident. He qualified this testimony by stating that he was not testifying as an accident reconstructionist. He declared in his discovery deposition that a passenger has a duty not to ride in a golf cart without handrails. During trial he qualified this statement, adding that a passenger has a duty not to ride without handrails when he/she knows of the absence of handrails. Finally, he stated that passengers must keep their feet inside the cart and never attempt to get out while it is in motion.

In separate counts, plaintiff claimed that both Indian Springs and Cochran failed to warn her of a condition which they knew, or should have known, to be dangerous. An additional count was directed to Cochran for negligently operating a vehicle which she knew, or should have known, was dangerous. The jury returned a verdict in favor of defendants and against plaintiff on all counts. The court entered judg-

ment in accordance with the jury's verdict and denied plaintiff's post-trial motions.

Plaintiff argues that she is entitled to judgment *n.o.v.* or, in the alternative, a new trial. Judgments *n.o.v.* are entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) A new trial may be granted if the verdict is against the manifest weight of the evidence. A verdict is contrary to the manifest weight of the evidence only when the opposite conclusion is clearly apparent or the findings appear to be unreasonable, arbitrary, and not based upon the evidence. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 1087, 401 N.E.2d 1145, 1153.

If there is evidence which if believed supports the verdict in favor of defendant, we will not interfere with the result. (*Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 349 N.E.2d 578.) It is for the jury alone to determine the credibility of the witness and the weight of the evidence in disputed questions of fact. (*O'Reilly v. Fencel* (1976), 38 Ill. App. 3d 499, 348 N.E.2d 251.) A verdict should not be disturbed on review merely because the jury could have drawn different inferences from the evidence. *O'Reilly*, 38 Ill. App. 3d at 501, 348 N.E.2d at 253.

■ A complaint for negligence must set out the existence of a duty owed by defendant to plaintiff, a breach of that duty, and an injury proximately resulting from the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307, 308.) The occurrence involved must not have been merely foreseeable, it must have been reasonably foreseeable. The creation of a legal duty requires more than a mere possibility of occurrence. *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 376, 308 N.E.2d 617, 619.

Count VII of the plaintiff's complaint against Cochran alleges that Cochran operated a golf cart which she knew, or should have known, was likely to be dangerous for a passenger. The initial question is whether the cart was actually dangerous without a handrail. On this point, the jury heard conflicting testimony. The original leaseholder of the carts (Johnson) said that a lack of handrails would definitely contribute to an accident. In contrast, the former manager of Indian Springs agreed that under certain conditions a cart without handrails could be dangerous. However, when asked if he felt the carts were unsafe, he replied that they were not.

■ As to the issue of defendant Cochran's knowledge of a dangerous condition, the fact that she had ridden in the cart as a passenger on several occasions is relevant. A jury could reasonably ask whether she would have subjected herself to this dangerous condition if the cart was, in fact, dangerous. A jury would be free to assume that Cochran did not sense that the cart was dangerous. Another factor is that plaintiff had been golfing for over 15 years and ridden in golf carts on many occasions. Her own familiarity with riding in golf carts could easily cause a jury to question whether she would willingly subject herself to riding in a dangerous golf cart unless, in fact, the cart was not seen to be dangerous.

Plaintiff's expert explained that the ANSI requires handrails as a safety device on all carts, but then admitted that of all the golf courses where he had worked, he had never employed these standards. In fact, he had no knowledge of these standards prior to trial. Under these facts, a jury could reasonably have concluded that a golf cart was not likely to be dangerous without handrails.

■ Another major element of count VII is whether the dangerous condition of the golf cart was a proximate cause of the injury to plaintiff. It is uncontested that the purpose of a handrail is to assist the passenger in staying in his/her seat. However, plaintiff's expert witness testified that he had seen people fall out of golf carts that were equipped with handrails, and furthermore, he could not state specifically that a handrail would have prevented this accident. Negligent conduct cannot be the proximate cause of an injury unless there is evidence that, but for the conduct, the injury would probably not have resulted. *Kincl v. Hycel, Inc.* (1977), 56 Ill. App. 3d 772, 787, 372 N.E.2d 385, 396.

The jury was free to believe that even had the handrail been in place, plaintiff might still have fallen out of the cart. Where a defendant's negligence creates merely a passive condition that makes an injury possible but is not necessarily the cause of the injury, defendant cannot be held liable for plaintiff's injury. (*Briske v. Village of Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976; *Fultz v. Myers* (1972), 5 Ill. App. 3d 230, 234, 282 N.E.2d 488, 490.) The testimony of plaintiff's expert confirms that a jury's determination of a lack of proximate cause would not be arbitrary.

■ A second element of plaintiff's case against both defendants is the failure to warn plaintiff of a dangerous condition. A duty to warn exists where there is unequal knowledge, actual or constructive, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. (*Kirby v.*

*General Paving Co.* (1967), 86 Ill. App. 2d 453, 457, 229 N.E.2d 777, 779.) Plaintiff presented testimony that the former leaseholder on the carts, Jack Johnson, had notified the Indian Springs greenskeeper of the unsafe condition of the carts. Also, the fact that Indian Springs had made repeated attempts to repair the handrails indicates a constructive knowledge of the dangerousness of the carts. This evidence is balanced against the testimony of the former course manager, who testified that he had no knowledge of anyone falling out of a cart, no knowledge of any prior injuries involving the lack of handrails, nor any injury of any kind with respect to golf carts. Cochran herself had used the cart in this condition several times, sitting as a passenger while her husband drove. There is no evidence that anyone at any time advised the Cochrans that their cart was unsafe, nor is there any evidence that they themselves considered the cart dangerous.

The purpose of a warning is to apprise the party of a danger of which she has no knowledge and thereby enable her to take appropriate measures to protect herself. (*Kokoyachuk v. Aeroquip Corp.* (1988), 172 Ill. App. 3d 432, 526 N.E.2d 607.) Where the danger is obvious and generally appreciated, nothing is gained by a warning and none is required. (*Kokoyachuk*, 172 Ill. App. 3d at 439, 526 N.E.2d at 610.) Injuries are not compensable if they are caused by inherent propensities of a product which are obvious to all who come into contact with it. *Lara v. Thoro-Matic Vacuum Systems, Inc.* (1990), 194 Ill. App. 3d 781, 551 N.E.2d 390.

Defendants both claim that the lack of handrails on the golf cart was an open and obvious condition that obviates the need to warn of danger. Testimony reveals that on the day of the accident, no one on the golf outing was consciously aware of the lack of handrails on the cart. This supports Cochran's contention that she had no prior knowledge of the dangerousness of the cart. The plaintiff naturally inquires how Cochran can at one time say that she had no knowledge of the lack of handrails and, at another time, contend that this condition is open and obvious. Both parties cite the same doctrine in support of their position, "[T]he law does not countenance the anomaly of one professing to look and not seeing that which is clearly visible." (*Warren v. Patton* (1954), 2 Ill. App. 2d 173, 180, 119 N.E.2d 465, 469; see also *Dee v. City of Peru* (1931), 343 Ill. 36, 42, 174 N.E. 901, 904.) Plaintiff contends that the lack of handrails was simply not obvious and confirms this with Cochran's testimony of her own lack of knowledge of the missing handrails. Cochran counters that plaintiff was an experienced golfer who had ridden in carts as many as 100 times before and had stepped in and out of the cart in question several times

just prior to the accident. As further support, Cochran also points to plaintiff's testimony where she looked at a picture of Cochran's golf cart and affirmed that she could see no handrails in the picture.

The citation to *Warren* is inappropriate because it deals with a situation where the open and obvious condition is one which is present, *e.g.*, a stoplight or a ravine, unlike the case at hand where the particular condition is essentially one of absence, *i.e.*, something is missing. Generally, a person will notice that something is missing only when he or she has his or her attention directed toward it or when the condition is so blatantly obvious that no one could possibly avoid recognizing it, *e.g.*, the golf cart had no wheels. We agree with plaintiff that the missing handrails, though visible, were not obvious. Still, the jury could reasonably find that Cochran, having received no warning from Indian Springs, no operator's manual, nor any other reason to suspect that the condition was dangerous, was equally oblivious to any danger as was the plaintiff. The reasonableness of that conclusion is reinforced by evidence that plaintiff had subjected herself to the same condition and the fact that Cochran was an equally experienced golfer with years of experience riding in golf carts. A duty to warn arises only where there is unequal knowledge with respect to the risk of harm. *Clark v. Penn Versatile Van* (1990), 197 Ill. App. 3d 1, 554 N.E.2d 643.

Unlike Cochran, Indian Springs can be presumed to have had at least some notice of the dangerous condition of the golf carts through the former leaseholder and his complaints to the greenskeeper. Still, it is a question for the jury as to whether the cart was in itself likely to be dangerous. In light of conflicting evidence regarding the safety of the golf cart, the jury was entitled to find it not likely to be dangerous so that no duty to warn attached.

■ The second part of plaintiff's appeal concerns the denial of a pretrial motion to amend the complaint with an additional count against Indian Springs. The count was based upon section 388 of the Restatement (Second) of Torts, which imposes a duty on the supplier of chattels to warn those who are expected to use the chattel of any danger of physical harm if the supplier: (a) knows or has reason to know that the chattel is or is likely to be dangerous for its intended use, (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and (c) fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be dangerous. Restatement (Second) of Torts §388, at 300-01 (1965).

■ The motion to amend was filed in a timely manner, and Indian Springs made no claim of surprise or prejudice. Defendants opposed the motion on grounds that it was a duplication of count I against Indian Springs, and the trial court agreed. Count I against Indian Springs was based on section 344 of the Restatement (Second) of Torts, which imposes a duty on landowners to protect invitees from the physical harm caused by the accidental, negligent, or intentionally harmful acts of third parties and by the failure to exercise reasonable care to (a) discover that such acts are being done or likely to be done; or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it. Restatement (Second) of Torts §344, at 223-24 (1965).

A comparison between count I and proposed count VIII indicates only three paragraphs which are not verbatim duplications. The first, paragraph six, in both counts states that defendant knew or should have known that without a safety handrail, a golf cart could pose a danger of injury to passengers, especially during turns. Proposed count VIII adds to this final clause that the cart was therefore likely to be dangerous for its intended use. This is a clear reference to section 388(a) of the Restatement (Second) of Torts and, applied to these pleadings and reduced to its simplest form, merely states that a golf cart without handrails is dangerous and therefore likely to be dangerous. The addition of the term of art "intended use," while referencing section 388(a) of the Restatement (Second) of Torts, does not alter the tautological character of this paragraph, and the trial court was amply justified in finding it duplicative.

Another difference between count I and proposed count VIII is in paragraph seven of the proposed amendment where an entirely new paragraph is added, stating "[t]hat the Defendant had no reason to believe that passengers, including the Plaintiff, would realize its dangerous conditions." This paragraph references section 388(b) of the Restatement (Second) of Torts, but does not significantly alter the character of the pleadings. Paragraph 12 of the original count I refers to defendant's failure to warn plaintiff of the dangerous condition of the golf cart. Certainly, under this paragraph, the plaintiff is required to prove not only that there was a failure to warn, but also that a warning was necessary. This seventh paragraph, while different from any in count I, calls for litigation of precisely the same issues as those raised in paragraph 12 of count I.

The final difference between the two counts is between paragraph 12 of count I and paragraph 13 of proposed count VIII. Paragraph 13 mimics section 388(c) of the Restatement (Second) of Torts, which

deals with the failure to exercise reasonable care to inform of a dangerous condition or of the facts which make it likely to be dangerous. Both paragraphs are concerned with the failure to warn of a dangerous condition, but count VIII specifically mentions failure to warn plaintiff *or* Ruth Cochran. The essence of the paragraph is a simple failure to warn of a dangerous condition, but by including Cochran in this duty to warn, a subtle transformation is accomplished. The jury instructions for count I state that Indian Springs knew, or should have known, that the *actions of Cochran* in operating her golf cart without a handrail on the passenger side could cause injury to plaintiff. These instructions imply that culpable behavior on the part of Cochran is essential before Indian Springs can be charged with negligence. The proposed count VIII, on the other hand, portrays both the owner of the golf cart *and* the subsequently injured passenger as victims of Indian Springs' negligence in failing to warn of a dangerous condition. By holding out both Cochran and plaintiff as victims of Indian Springs' negligence, Cochran's role in the chain of events becomes meaningless and Indian Springs is seen to stand alone in its sale of a defective golf cart.

Whatever benefit plaintiff may have attained had the proposed amendment been allowed was lost in the drafting of the jury instructions for count I. As discussed earlier, count I is based upon section 344 of the Restatement, which provides that landowners owe a duty to protect invitees from the actions of third parties. This section covers not only the negligent and intentionally harmful acts of third parties, but also accidental actions. Despite the implication that the actions of both defendants are intertwined, no negligent or culpable behavior on the part of Cochran is required under section 344 of the Restatement because the essence of the action is the defendant's failure to warn. Page one of plaintiff's tendered jury instruction No. 12 reflects this doctrine when it states that the defendant's failure to warn the plaintiff was a proximate cause of her injuries. And yet, on plaintiff's instruction No. 13(a), the final checklist for the jury, plaintiff states that in order to find a verdict against Indian Springs under count I, the jury must find that *the actions of Cochran* in operating her cart without a handrail were a proximate cause of plaintiff's injury. Plaintiff cannot be allowed to complain of confusion in the relationship between defendants, when this confusion is at least partially authorized by the plaintiff herself.

Other than the one additional phrase in paragraph 13 of proposed count VIII, where the failure to warn is directed to both Cochran and plaintiff, the two counts are substantially identical. Paragraph 13

yields a subtle, yet significant, separation of the parties, forcing Indian Springs to stand on its own in its failure to warn of a dangerous condition. If the trial court committed a subtle error in missing the potential significance of that one small phrase in count VIII, then the plaintiff has committed a gargantuan error by demolishing in her jury instructions that which count VIII was intended to create—the independence of the claims between the two defendants.

Plaintiff claims count VIII was premised on section 388 of the Restatement (Second) of Torts, which deals with the liability of suppliers of chattels, and yet the words "supplier of chattels" do not appear anywhere in the proposed count. The fact that Indian Springs sold the golf cart to Cochran is alleged in paragraph three, but this paragraph is an exact duplicate of paragraph three in the existing count I. One must ask how anyone would know that this proposed count had any relationship to section 388 of the Restatement (Second) of Torts. No briefs were submitted with the proposed amendment, and plaintiff did not respond on the record when Indian Springs opposed the motion to amend. No mention of section 388 of the Restatement (Second) of Torts is preserved in the record. As discussed earlier, the slight alterations to the three paragraphs in count I were designed to reference sections 388(a), (b), and (c) of the Restatement (Second) of Torts, which deal with the duty to warn. Yet, nowhere in proposed count VIII does it reference the substance of section 388 of the Restatement (Second) of Torts as a rule applicable to suppliers of chattels. The trial court was amply justified in ruling that the count was a mere duplication of count I.

Amendments of plaintiff's complaint should be allowed where justice will not be served by denial thereof. (*Seibring v. Parcell's Inc.* (1987), 159 Ill. App. 3d 676, 681, 512 N.E.2d 394, 398.) The decision of a trial court as to whether to permit an amendment is a matter of judicial discretion and will not be disturbed on appeal absent an abuse of such discretion. (*Taylor v. City of Beardstown* (1986), 142 Ill. App. 3d 584, 591, 491 N.E.2d 803, 808.) Where the movant does not raise anything new in her proposed amendment, a trial court does not abuse its discretion in denying leave to amend. (*Taylor*, 142 Ill. App. 3d at 594-95, 491 N.E.2d at 810.) Plaintiff's failure to draft the proposed count in a manner that clearly referenced section 388 of the Restatement (Second) of Torts clearly vindicates the court's inability to perceive its subtle significance. Any confusion in the relationship of the defendants which the proposed count VIII was designed to clarify was itself created by the plaintiff's own instructions to the jury. Plaintiff cannot be allowed to submit jury instructions which draw an

erroneous relationship between the two defendants and then claim that the relationship would never have existed had the court allowed the complaint to be amended with an additional count.

Affirmed.

GREEN, P.J., and STEIGMANN, J., concur.