No. 4-98-0031

Corrected Opinion

September 28, 1998

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

MARY J. BAILEY, f/k/a MARY J. HAMMONS, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Vermilion County

GREGORY T. WILSON, ) No. 95L181

Defendant-Appellee. )

) Honorable

) Thomas J. Fahey,

) Judge Presiding.

JUSTICE KNECHT delivered the opinion of the court:

The parties were involved in a two-car col­li­sion in Danville, Illinois.  Plain­tiff filed a neg­li­gence law­suit against defendant for per­sonal inju­ries to her head, neck, and back.  After a trial, the jury re­turned a ver­dict in defendant's fa­vor.  Plain­tiff ap­peals, argu­ing the ver­dict was con­trary to the mani­

fest weight of the evi­dence and the court erred in admitting evi­

dence of a prior auto­mo­bile acci­dent involving plaintiff.  We disagree and affirm.

I. BACKGROUND

The automobile accident occurred in January 1995, as de­fen­dant was driv­ing north on Ver­mil­ion Street, a four-lane road in Danville, Illi­nois.  When he ap­proached the in­ter­sec­tion at Wil­liams Street the traffic light was green.  He slowed his auto­

mo­bile, pulled into the left turn lane, and pre­pared to turn onto Wil­liams Street.  He checked traf­fic and noticed anoth­er vehicle (not plaintiff's automobile) facing the oppo­site di­rec­tion and wait­ing in the left turn lane.

As he pro­ceed­ed to turn left through the in­ter­section, his auto­mo­bile struck plaintiff's vehi­cle, which was trav­eling south on Vermil­ion Street.  His right front quar­ter panel collid­

ed with plain­tiff's front bump­er.

Prior to trial, the court denied plaintiff's mo­tion 
in
 
limi­ne
, which sought to pre­clude de­fendant from introducing evi­

dence of a January 1993 automo­bile accident in­volv­ing plain­tiff.  Dr. Raj Rajeswaren treated plaintiff after the 1993 acci­dent.  According to Dr. Rajeswaren's evidence deposition, the 1993 acci­

dent re­sult­ed in inju­ries to plaintiff's neck.  He diag­nosed her with post-con­cus­sion syn­drome, acute cer­vical strain, and left brachi­al plexopathy.  Dr. Rajeswaren also pre­scribed physi­cal ther­a­py and an­tici­pated full re­covery in four to six weeks.  After her last exami­na­tion in March 1993, plain­tiff had full and pain-free range of mo­tion.

At the August 1997 trial, plaintiff testified she was trav­el­ing south on Ver­mil­ion Street going approximately 30 miles per hour, which was the posted speed limit.  The traffic light at the intersection of Williams Street was green.  Defendant's auto­

mo­bile was facing the opposite direction in the left turn lane across Williams Street.  When she was about three car lengths from the in­ter­sec­tion, defendant hesi­tated before making his turn and she took her foot off the accelera­tor.  De­fendant then turned in front of her, caus­ing her to brake and veer to the left.  She did not sound her horn before colliding with defendant's vehicle.  The im­pact threw her for­ward, caus­ing her head to hit the win­dow.

Defendant described the collision as a solid bump.  After the collision, he got out of his automobile and twice asked plain­tiff if she wanted an ambulance.  She refused both times.  A third party who witnessed the accident also asked if she want­ed an ambulance and she again refused.  However, plain­tiff was preg­

nant at the time of the accident so defendant con­vinced her to take an ambu­lance to the hos­pi­tal.  Plain­tiff was taken to the emer­gency room at Unit­ed Sa­mar­i­tans Medi­cal Cen­ter.

Plaintiff testified she told the emergency room per­son­

nel her neck was sore and she was having sharp, knife-like pains in her back.  How­ev­er, in his evidence deposition, Dr. Philip Barnell, the doc­tor who ini­tial­ly treat­ed plain­tiff, stat­ed she de­nied chest, neck, shoul­der, and back pain.  Never­the­less, Dr. Barnell ordered a cervical spine X ray and the results were nor­

mal.  Based on plaintiff's statements and the diag­nos­tic tests, he con­cluded plaintiff was not injured except for ab­dom­i­nal ten­

der­ness and fetal demise occur­ring be­fore the acci­dent.  Plain­

tiff did not seek recovery for the death of her unborn child.

Also testifying via an evidence deposition, Dr. Kevin Kirby, plaintiff's phy­si­cian, stat­ed plain­tiff did not com­plain of lower back pain in the emergency room, but did com­plain of neck pain.  Dr. Kirby testi­fied plain­tiff had spasms and ten­der­

ness in her neck; howev­er, the cervical X ray did not show any fractures and there was no sig­nificant tis­sue swell­ing.  He stat­

ed an acute fracture from the acci­dent would have caused plain­

tiff sig­nif­i­cant pain on examination.

After being released from the hospital, plaintiff re­

mained in bed for two days.  She stated she could hardly move her neck, her head ached, her lower back was sore, and she could not move without pain.  She was uncertain whether she told Dr. Kirby about the sharp pain in her lower back; however, he did not re­

call any com­plaints re­gard­ing her lower back.

Plaintiff contin­ued to see Dr. Kirby for her inju­ries and fetal de­mise through March 1995.  During their last appoint­ment, Dr. Kirby told plain­tiff to expect slow improvement over the next six to eight weeks and to check back if she had fur­ther prob­lems.  Plain­tiff never re­turned to see Dr. Kirby.

Shortly after her last visit with Dr. Kirby, plaintiff began treatment with Dr. Sreemannarayana Prathipati, a reha­bili­

tation doctor.  In his evidence deposition, Dr. Prathipati s­tated plain­tiff com­plained of neck and shoulder pain, a chok­ing sen­sa­

tion in her throat, lower back pain radiat­ing through her legs, tin­gling in her right arm, and a sensation in her hands and lower ex­trem­i­ties as if they were asleep.  His exam­i­na­tion re­vealed weak­ness in both hands, a lim­ited range of mo­tion in her neck, and tender­ness in her neck, back, and lumbar areas.

An electromyogram test (EMG) revealed nerve root irri­

ta­tion in her cer­vi­cal levels C5, C6, and C7 (neck area).  Fur­

ther, X rays re­vealed a chip frac­ture at L3 and a compression fracture at T12-L1 (lower back area).  Dr. Prathipati could not tell how old those frac­tures were, other than to say they were more than six weeks old.  He stat­ed plaintiff's frac­tures would have caused immediate pain.  Dr. Prathipati ordered an magnetic resonance imaging test (MRI) of plaintiff's cervical and lum­bar spine, which may reveal a nerve injury if there is suf­fi­cient swell­ing.  Plaintiff's MRI did not uncover any inju­ries.

Plain­tiff tes­ti­fied she told Dr. Prathipati about the January 1993 auto­mo­bile acci­dent during her first visit with him; how­ev­er, Dr. Prathipati denied know­ing about that acci­dent.  The only accident he was aware of was the January 1995 accident.

Based on this his­to­ry, he concluded her frac­tures were the result of the 1995 acci­dent.  Dr. Prathipati stated he wanted to know about plaintiff's complete history before diagnosing the cause of her injury.  However, he re­lied sole­ly on plaintiff's account of the 1995 acci­dent in reaching his con­clu­sion.

In April 1995, Dr. Prathipati referred plain­tiff to Dr. Rajeswaren.  Dr. Rajeswaren, again testifying via an evidence depo­si­tion, stated plain­tiff com­plained of stab­bing pain at the base of her neck, tight­ness in the sides of her neck, numb­ness and tin­gling in her hands, lower back pain, and head­aches.  After con­ducting a physi­cal examina­tion, Dr. Rajeswaren diagnosed her with cervical and lumbar strain and recurrent head­aches.  He did not find clin­ical evi­dence of a pinched nerve or spinal cord injury.  He asked plaintiff to return after Dr. Prathipati re­

ceived the re­sults from her MRI; however, she never returned.

In April 1996, Dr. Prathipati referred plain­tiff to Dr. Rich­ard Rak, a neu­ro­log­i­cal sur­geon.  In his evidence deposi­tion, Dr. Rak tes­ti­fied plaintiff com­plained of lower back pain, neck pain, mus­cle spasms in her shoulder, and mild neck stiff­ness.  She provided Dr. Rak with details of the Janu­ary 1995 acci­dent.  How­ever, she did not tell Dr. Rak about the Janu­ary 1993 acci­

dent.  Dr. Rak stated an inac­cu­rate patient his­to­ry would affect his opin­ion as to the cause of plaintiff's symp­toms.

Upon examining plaintiff, Dr. Rak did not ob­serve any spasms, but the EMG re­vealed some­thing wrong with plaintiff's nerve roots on the left side of her neck.  The MRI did not reveal any evi­dence of a her­niated disc, abnor­mality in the spi­nal cord, or nerve root com­pression.  He also checked for muscle atro­phy and found none.  He administered a strength test and found no definite muscle weakness.  Dr. Rak concluded that plaintiff was purposely refraining from using her full strength.  He diag­nosed plaintiff with per­ma­nent nerve root irri­ta­tion in the neck and stat­ed nerve root irritation is most com­monly caused by disc hernia­tion or, less commonly, when a nerve root is stretched.

After the parties testified and the evidence deposi­

tions were read to the jury, the court in­struct­ed the jury on neg­ligence in accor­dance with Illi­nois Pat­tern Jury In­struc­tions, Civil, No. B21.02 (3d ed. 1995), which states plain­tiff bears the bur­den of prov­ing (1) defendant was negli­gent, (2) plaintiff was in­jured, and (3) defendant's negli­gence was the proximate cause of plaintiff's injuries.  The jury was also instructed defendant was not liable if he proved plaintiff's com­par­a­tive neg­li­gence was more than 50% the prox­i­mate cause of her injury.  See Illi­

nois Pattern Jury In­struc­tions, Civil, No. B21.02 (3d ed. 1995).

On Au­gust 20, 1997, the jury re­turned a ver­dict in defendant's favor.  On Sep­tem­ber 19, 1997, plain­tiff filed a mo­

tion for a new trial or judg­ment not­with­standing the verdict (
n.o.v.
), arguing the jury's ver­dict was con­trary to the mani­fest weight of the evi­dence.  On Sep­tem­ber 23, 1997, without leave of the court, plain­tiff filed an amend­ment to the motion, which for the first time raised her contention the court erred in al­low­ing evi­dence de­tailing the Janu­ary 1993 acci­dent and injury.

In October 1997, plaintiff sought leave to file the amend­ed posttrial motion.  In De­cem­ber 1997, the court den­ied plaintiff's (1) origi­nal posttrial motion, (2) amend­ed posttrial motion, and (3) motion to file an amended posttrial motion.  The court de­ter­mined it lacked juris­dic­tion to hear the amended mo­

tion because it was filed more than 30 days after the entry of judg­ment without the court's permis­sion.  This ap­peal fol­lowed.

II. ANALYSIS

On appeal, plaintiff raises three conten­tions: (1) her amended posttrial motion preserved her right to ap­peal the court's deci­sion admitting evidence of her January 1993 auto­mo­

bile acci­dent; (2) the court erred in al­low­ing said evi­dence to be ad­mit­ted (
Brown v. Baker
, 284 Ill. App. 3d 401, 404-05, 672 N.E.2d 69, 71 (1996)); and (3) the jury's ver­dict was con­trary to the mani­fest weight of the evi­dence (
Timm v. Indian Springs Rec­

re­ation Ass'n
, 226 Ill. App. 3d 760, 764, 589 N.E.2d 988, 991 (1992)).  We find her arguments unper­sua­sive and af­firm the trial court's judgment.

A. The 1993 Automobile Accident

Initially, we note defendant contends plaintiff failed to pre­serve her right to appeal the trial court's deci­sion admit­

ting evi­dence of the 1993 auto­mo­bile acci­dent.  Defendant alleg­es the issue is forfeited be­cause plaintiff's amended posttrial mo­

tion, which raised the issue for the first time, was filed be­yond the 30 days al­lowed by stat­ute with­out the court's permis­sion.  See 735 ILCS 5/2-1202(c) (West 1996).  How­ever, because we con­

clude the evi­dence was prop­er­ly ad­mit­ted, we need not ad­dress these proce­dural arguments.

Generally, in personal injury actions, evi­dence of plaintiff's prior inju­ry is admis­sible when there is ei­ther (1) a caus­al connec­tion between the current injury and the prior inju­

ry, or (2) both inju­ries in­volve the same area of the body.  See 
Molitor v. Jaimeyfield
, 251 Ill. App. 3d 725, 728, 622 N.E.2d 1250, 1252 (1993) (2d Dist.); 
Wil­son v. Gran­ite City Steel Divi­

sion of National Steel Corp.
, 226 Ill. App. 3d 96, 109-10, 589 N.E.2d 660, 668 (1992) (5th Dist.); 
Elliott v. Koch
, 200 Ill. App. 3d 1, 14, 558 N.E.2d 493, 502-03 (1990) (3d Dist.); 
Elberts v. Nussbaum Truck­ing, Inc.
, 97 Ill. App. 3d 381, 384, 422 N.E.2d 1040, 1042 (1981) (1st Dist.).

However, plaintiff contends the similar location of her previous and current injuries is in­suf­fi­cient to admit the evi­

dence of the January 1993 acci­dent.  She as­serts this evi­dence is ad­mis­sible only if de­fen­dant can es­tab­lish a caus­al con­nec­tion be­tween her pres­ent symptoms and the 1993 injury.  Because de­fen­

dant's evidence failed to establish this caus­al link, the court erred in admit­ting evi­dence of the January 1993 acci­dent and injury.  See 
Brown
, 284 Ill. App. 3d at 404, 672 N.E.2d at 71.

In 
Brown
, the Fifth Dis­trict Ap­pel­late Court con­clud­ed evi­dence of a prior inju­ry is ad­mis­si­ble only if ex­pert tes­timony estab­lishes a caus­al link be­tween the past inju­ry and the present symptoms.  The 
Brown
 court dis­tin­guish­ed its ear­lier deci­sion in 
Wil­son
, 226 Ill. App. 3d at 109-10, 589 N.E.2d at 668, by empha­

sizing the 
Wil­son
 plaintiff's prior inju­ry was per­ma­nent and resulted in symp­toms simi­lar to those he was experi­enc­ing.  Thus, the 
Wilson
 defendant was not compelled to prove cau­sa­tion and evi­dence of the plaintiff's prior injury was admissible.  See 
Brown
, 284 Ill. App. 3d at 405, 672 N.E.2d at 72.

The 
Brown
 court reasoned the court's pre­vi­ous ap­proach, 
i.e.
, admitting evi­dence of a prior inju­ry based solely on its similar location to the current injury, in­vites the jury to "spec­u­late on a nexus be­tween the past acci­dent and the pres­ent inju­ry.  Such unfounded conjec­ture and guesswork consti­tutes a viola­tion of the very cautionary instructions given to every Illi­nois juror in civil cases."  
Brown
, 284 Ill. App. 3d at 405, 672 N.E.2d at 71.

We appreciate the potential problems out­lined by the 
Brown
 court; however, rele­vant evi­dence is gen­eral­ly ad­mis­si­ble.  See 
Elliott
, 200 Ill. App. 3d at 14, 558 N.E.2d 493 at 503.  For example, in per­sonal inju­ry ac­tions, evi­dence of a prior inju­ry to the same part of plaintiff's body is germane to both cau­sa­tion and the extent of plaintiff's dam­ages.  See 
Molitor
, 251 Ill. App. 3d at 728, 622 N.E.2d at 1252; 
Elliott
, 200 Ill. App. 3d at 14, 558 N.E.2d 493 at 503.  This evidence is especially relevant be­cause plaintiff's prior injury was acquired under similar cir­

cum­stances only two years before the instant accident and inju­ry.

Furthermore, because the bur­den is on the plain­tiff to prove neg­li­gence, not on the de­fen­dant to dis­prove it (see 
Leonardi v. Loyola Uni­ver­sity
, 168 Ill. 2d 83, 94, 658 N.E.2d 450, 455 (1995)), de­fen­dant should not be held to the same stan­

dard of proof as plain­tiff.  
Cf
. 
Brown
, 284 Ill. App. 3d at 404-

05, 672 N.E.2d at 71.  While expert testimo­ny estab­lish­ing a causal link between the past inju­ry and pres­ent symptoms in­creas­

es the weight afforded the evidence, de­fen­dant need not es­tab­lish this link for the evi­dence to be admitted.

Moreover, evi­dence of a prior inju­ry may be rele­vant for im­peach­ing cred­i­bil­i­ty, as demonstrated by this case.  See 
Wil­son
, 226 Ill. App. 3d at 110, 589 N.E.2d at 668-69.  Plain­

tiff's ap­parent fail­ure to men­tion the 1993 acci­dent to her treat­ing phy­si­cians calls into ques­tion the sin­ceri­ty of her alle­ga­tions.  This im­peach­ing evi­dence is for the jury to weigh.

Consequently, evi­dence of a prior inju­ry may be ad­mis­

sible when defendant 
either
 establishes a caus­al con­nec­tion be­

tween the cur­rent and prior inju­ry 
or
 the inju­ries in­volve the same area of the body.  As long as there is some evi­dence of the nature, ex­tent, dura­tion, or treat­ment of the previ­ous inju­ry, an inde­pen­dent show­ing of cau­sa­tion is un­nec­es­sary.  See 
Molitor
, 251 Ill. App. 3d at 728, 622 N.E.2d at 1252.

After the 1993 automobile accident, plaintiff was treat­ed by Dr. Rajeswaren for an acute cervical strain and re­

ceived sev­er­al weeks of phys­i­cal ther­a­py until she expe­ri­enced pain-free range of motion.  In the instant case, plain­tiff pro­

fessed a similar inju­ry to her neck from her colli­sion with defendant's vehicle.  The trial court prop­erly ad­mit­ted evi­dence of the 1993 inju­ry.

B. The Jury's Verdict

Initially, we note both parties failed to request spe­

cial interrogatories be submitted to the jury.  See 735 ILCS 5/2-

1108 (West 1996).  Special interrogatories serve to clarify and sharp­en the jury's consideration of the case.  Further, the jury's responses shed light on its decision and nar­row the po­ten­

tial is­sues on ap­peal, thereby making the appellate process more effi­cient.  See Ill. Ann. Stat., ch. 110, par. 2-1108, Historical & Practice Notes, at 771 (Smith-Hurd 1983).  Here, the jury's responses to special inter­rog­a­to­ries would have al­lowed plaintiff to narrow her appeal to the individ­ual issue or issues the jury found in defendant's favor.

However, without the assistance of special interrogato­

ries, plain­tiff ap­peals a gen­eral ver­dict.  Con­se­quent­ly, she must es­tablish each of the fol­low­ing po­ten­tial adverse jury find­

ings was con­trary to the mani­fest weight of the evi­dence:  (1) de­fen­dant was not neg­li­gent; (2) defendant's neg­li­gence was not the cause of her inju­ries; (3) she was not in­jured; and (4) she was more than 50% negligent.  Based on this record, we con­clude the jury could have properly con­clud­ed plain­tiff was not in­jured in the 1995 auto­mo­bile acci­dent.

As evi­dence of plaintiff's injury, she cites (1) Dr. Rajeswaren's tes­timo­ny she was not suf­fering any dis­com­fort prior to the acci­dent, (2) Dr. Kirby's diagnosis of mild neck stiffness and spasms, (3) the clinical findings of Dr. Prathipati and Dr. Rajeswaren, (4) her com­plaints of lower back pain, and (5) the medi­cal bills incurred as a re­sult of the acci­dent.

However, the evidence also revealed plaintiff did not want to go to the emergency room imme­diately after the accident and had to be persuaded to go.  Once at the hospital, she denied lower back and neck pain during her initial exam.  While plain­

tiff later com­plained of neck pain, tests conducted at the emer­

gency room failed to un­cover any evidence of a neck inju­ry.  Plaintiff asserted she told her treat­ing phy­si­cians about her lower back pain even though both physi­cians de­nied knowing about the symp­tom.  Further, two doctors testified fractures in plain­

tiff's back would have caused significant pain.

Although Dr. Prathipati diagnosed plaintiff with a chip and com­pres­sion fracture in her lower back, two other doc­tors were un­able to find similar injuries.  Fur­ther, Dr. Prathipati's con­clu­sion the 1995 acci­dent caused plaintiff's inju­ries was under­mined by plaintiff's failure to inform him of the 1993 acci­

dent.  The jury was free to weigh this evi­dence in rela­tion to Dr. Prathipati's diagnosis.

Also, plaintiff's credibility was impeached based on (1) her failure to inform her treating physicians of the 1993 acci­dent, and (2) Dr. Rak's testimony plain­tiff pur­pose­ly re­

strained her­self during a strength test.  Be­cause the evi­dence of plaintiff's injury consisted mostly of her tes­timo­ny, her cred­

ibil­ity is vital to the jury's deter­mina­tion.  The jury could have disbelieved plaintiff and con­clud­ed the 1995 accident did not injure plain­tiff or cause her al­leged symptoms.

Based on her medical bills, plaintiff contends she is at least enti­tled to damages for expenses she incurred at the hospital.  As a general rule, the amount of damages awarded is within the discretion of the jury (see 
Majcher v. Laurel Motors, Inc.
, 287 Ill. App. 3d 719, 727, 680 N.E.2d 416, 422 (1997)) and plaintiff is only entitled to recov­er dam­ag­es to the ex­tent of her injury (see 
Siegel v. Levy Organiza­tion Devel­op­ment Co.
, 182 Ill. App. 3d 859, 861, 538 N.E.2d 715, 716 (1989)).  Presuming the jury concluded plaintiff was not injured, its re­fusal to award damages was consistent with its finding and with­in ­its dis­

cre­tion.

Furthermore, the plaintiff's failure to prove she was inju­red in the 1995 accident makes her alleged dam­ages claim spec­ula­tive in na­ture.  See 
Goran v. Glieberman
, 276 Ill. App. 3d 590, 595, 659 N.E.2d 56, 60 (1995).  Because speculative damages are not recov­erable (see 
Siemieniec v. Lu­ther­an Gen­er­al Hos­pi­tal
, 117 Ill. 2d 230, 259, 512 N.E.2d 691, 706 (1987)), the jury's finding was not con­trary to the manifest weight of the evidence.

We find the jury could have properly concluded plain­

tiff was not injured in the 1995 automobile accident.  Therefore, the jury's ver­dict was not contrary to the manifest weight of the evidence and we need not address plaintiff's remaining arguments re­gard­ing this issue.

III. CONCLUSION

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

GARMAN, P.J., and COOK, J., concur.